## UNITED STATES

### v.

### Senior Airman Terry M. EUBANK, FR 315–64–0589 United States Air Force.

### ACM S25067.

U. S. Air Force Court of Military Review.

Sentence Adjudged 21 July 1980.

Decided 15 Dec. 1981.

Appellate Counsel for the Accused: Colonel George R. Stevens and Captain Willard K. Lockwood.

Appellate Counsel for the United States: Colonel James P. Porter and Lieutenant Colonel Bruce R. Houston.

Before POWELL, KASTL and MAHONEY, Appellate Military Judges.

## OPINION UPON REMAND

MAHONEY, Judge:

██ This case is before us, upon remand from the Court of Military Appeals, to consider issues arising from the purported withdrawal of authentication of the record by the trial judge, due to alleged impropriety in the pre-referral processing.[1] Having considered those issues, we find that the military judge lacked authority to withdraw his authentication of the record.[2] We delay

1. On 29 April 1981, this Court affirmed the findings and sentence in the accused's case in an unpublished decision. On 5 June 1981, his petition for grant of review was filed in the Court of Military Appeals. *United States v. Eubank*, 11 M.J. 338. That event divested this Court of jurisdiction over the case. Rule 20, Courts of Military Review, Rules of Practice and Procedure; Article 67, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 867. On 8 June 1981, a letter addressed to the Chief Judge of this Court was received from the trial judge. In it, the trial judge purported to withdraw his authentication of the record, due to an alleged irregularity in the preparation of the letter of transmittal (Air Force Form 65) forwarding the charges from the accused's immediate commander to the commander exercising summary court-martial jurisdiction. In view of this Court's lack of jurisdiction, the trial judge's letter, and attached affidavits, were forwarded to the accused's appellate counsel. Subsequently, appellate defense counsel moved to remand the accused's case to this Court for consideration of issues raised by that letter, *United States v. Eubank*, 11 M.J. 400, and the motion was granted on 31 August 1981. *United States v. Eubank*, 12 M.J. 47.

2. In arriving at this conclusion of law we have not overlooked the practical suggestion of Judge Fletcher (dissenting) that a new authentication be obtained. *United States v. Eubank*, 12 M.J. 47, 48. Certainly, directing the trial judge to re-authenticate the record would moot any issue concerning its status, but such action would also suggest, inaccurately we believe, that the trial judge (or any substitute authenti-

again affirming the findings and sentence for a period of thirty (30) days, however, to afford the accused the opportunity to petition this Court for a new trial if he believes a jurisdictional fraud was perpetrated upon the court.

Our discussion of the issues raised by the trial judge's letter requires analysis of the authentication process, to include: (1) the component parts of the court-martial record, (2) precisely what is authenticated by the military judge, and (3) the legal nature of that authentication process.

 The trial counsel is responsible for preparation of the record of trial, Article 38(a), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 838(a); Manual for Courts-Martial (MCM) 1969 (Rev.) paras. 82 a and 82e, and the judge is responsible for its authentication, Article 54(a), UCMJ, 10 U.S.C. § 854(a); MCM 1969 (Rev.) para. 82 f. The military judge cannot delegate the duty to correct and personally authenticate the record. *United States v. Kaag*, 23 U.S. C.M.A. 160, 48 C.M.R. 776 (1974). Only when the judge is absent, disabled, or dead, may the authentication duty be assumed by a statutory alternate. *United States v. Lott*, 9 M.J. 70 (C.M.A.1980); *United States v. Cruz-Rijos*, 1 M.J. 429 (C.M.A.1976); *United States v. White*, 12 M.J. 643 (A.F.C. M.R.1981); *United States v. Zilch*, 7 M.J. 708 (A.F.C.M.R.1979) *pet. denied*, 8 M.J. 39 (C.M.A.1979). *See*, MCM 1969 (Rev.) para. 39f. The alternates authorized to authenticate the record are the trial counsel (if not similarly unavailable), or a court member (or, if the trial was by military judge alone, the court reporter). Article 54(a), UCMJ.

 In regard to record preparation, paragraph 82 of the Manual for Courts-Martial, 1969 (Rev.) states: [3]

Each general court-martial shall keep a separate record of the proceedings of the trial of each case brought before it. The record is prepared by the trial counsel under the direction of the court, but the persons authenticating the record are responsible for its accuracy....

\*　　\*　　\*　　\*　　\*　　\*

The record of the proceedings in each case will be separate and complete in itself and independent of any other document.... It will set forth a verbatim transcript of all proceedings had in open sessions of the court, all sessions held by the military judge, and hearings held out of the presence of the members....

Later, in paragraph 82b, the MCM addresses the subject of matters not a part of the record which are attached to it:

(5) *Appendages.* Accompanying the original record—securely bound together—will be the original charge sheet and, if not used as exhibits or properly disposed of otherwise, the other papers which accompanied the charges when referred for trial, ...

 In its broadest sense, the record of trial consists of everything between the "blue covers": [4] a wide variety of documents, ranging from preliminary investigative reports to post-trial clemency evaluations to the orders promulgating the results of trial and the action of the convening authority. In a slightly narrower sense, the record of trial consists of the "entire record" which defines the normal scope of review by this Court. It encompasses the transcript of the trial proceedings, the documentary exhibits, and the allied papers. *United States v. Castleman*, 10 M.J. 750

cating official) exercises continuing jurisdiction over a case as it wends its way through the review and appellate process. Such a concept is foreign to the distinctly-tiered structure provided by the UCMJ for the trial and appeal of courts-martial. *See, e.g., United States v. Occhi*, 2 M.J. 60 (C.M.A.1976).

3. Air Force policy requires that special courts-martial be tried with a military judge. Air Force Manual 111–1, Military Justice Guide, 2 July 1973, paragraph 3–7. Therefore, when a

BCD is adjudged at a special court-martial, preparation and authentication of the record is carried out in the same fashion as for a general court-martial. MCM 1969 (Rev.), para. 83a.

4. Department of Defense Form 490, 1 April 1970, is a package of instructions and blanks, used in preparation and assembly of a record of trial, including heavyweight front and back cover sheets which are light-blue in color.

(A.F.C.M.R.1981). The allied papers include those documents required to process the accused's case to trial, and may also include post-trial reviews and reports. Unless specifically addressed at trial, they are not presented to or considered by the military judge. With the exception of those related to the constitution of the court,[5] most of the "allied papers" are outside the personal knowledge of the military judge at the time of trial, and are either present incidentally between the "blue covers" or not yet in existence at the time of authentication. Missing exhibits may make the record materially incomplete, but they do not detract from its verbatim status. *United States v. McCullah*, 11 M.J. 234 (C.M.A.1981), *modifying United States v. McCullah*, 8 M.J. 697 (A.F.C.M.R.1980).

■ What then, precisely, does the military judge's signature authenticate? In short, it authenticates only the transcript of trial proceedings held by and before the trial judge. Normally, as in the accused's case, those proceedings are limited to open-court sessions and court hearings held out of the presence of the court members.[6]

■ The record of trial by court-martial becomes authentic upon the signature of the military judge or substitute authenticating official. The authentication process, of necessity, involves the exercise of discretion in determining that the transcript of the trial proceedings accurately reflects the events at trial. There is however, no discretion vested in the authenticating official to determine whether or not to perform the duty of authentication. The act of authentication is a positive duty imposed by law. Article 54(a), UCMJ. In the actual performance of the act, the judge has no discretion to determine the result, except in obedience to the mandate that the transcript be an accurate reflection of the trial events. The judge may not, in correcting and authenticating the record, exercise any discretion other than to accurately reflect what occurred at trial. Indeed, regardless of his view of the result of the trial, to do otherwise would be a criminal offense. Article 98(2), UCMJ, 10 U.S.C. § 898(2).

■ From the foregoing, we conclude that authentication of a record of trial is a ministerial act, as distinguished from a judicial act. It is merely the execution of a set task required by law, *see, Dunbar v. Fant*, 170 S.C. 414, 170 S.E. 460 (1933), and requires no judgment as to the propriety of the act. *Hamma v. People*, 42 Colo. 401, 94 P. 326 (1908). The ministerial nature of the duty involved becomes immediately apparent when one considers that the substitute authenticating officials authorized by the UCMJ are not judicial officers, or even individuals who necessarily have legal training or an impartial perspective upon the trial. They are simply witnesses to the trial events, presumably capable of verifying the accuracy of the transcript. The statutory preference for the judge as authenticator is understandable in view of his impartiality and ability to understand the legal issues recorded in the transcript. However, the basic nature of the task requires neither legal judgment nor impartiality—it simply requires an ability to recall the trial events and to ensure the transcript accurately reflects them.

■ Our determination that authentication of the trial proceedings is a ministerial act is significant because it is universally recognized that mandamus lies to enforce ministerial, as distinguished from judicial, duties. That the performance of a duty may require some discretion in ensuring that the record accurately reflects the trial proceedings does not make it a judicial act. Criminal courts have a positive duty to provide a correct record of their proceedings, and that duty may be compelled by mandamus. *See, People v. Meehan*, 124 Cal.

5. A request for trial by military judge alone, Article 16, UCMJ, 10 U.S.C. § 816, or a request for enlisted members, Article 25, UCMJ, 10 U.S.C. § 825, is presented to the court and attached to the convening order.

6. In unusual circumstances, "trial proceedings" may exceed the scope of formal court sessions. *See, United States v. Svan*, 10 M.J. 784, 786 (A.F.C.M.R.1981).

App.2d 589, 269 P.2d 70 (1954). Likewise, the clear duty imposed upon the military judge is to provide the convening authority an authenticated record.[7] The judge has no discretion to do otherwise, and the Court of Military Appeals has implicitly recognized as much by ordering the authentication of a trial record. *Thornton v. Joslyn*, 22 U.S.C. M.A. 437, 47 C.M.R. 415 (1973).

■ We conclude that, since the authentication of a record of trial is a ministerial duty imposed by law and subject to the compulsion of mandamus, once that duty has been done, it may not be undone. Just as the military judge has no discretion to refrain from doing the act, he has no discretion to void the act. It follows, therefore, that once an authenticated record has been transmitted by the trial judge (or substitute authenticating official) to the convening authority, the act of authentication is complete and not subject to revocation or withdrawal.[8]

■ In the event that a mistake in the authenticated transcript is later discovered —i.e.: that the transcript is not an accurate record of the trial events—the authenticating official may prepare and submit to the appropriate authority a certificate correcting the error or omission. MCM 1969 (Rev.), para. 86c.[9] Carried to its limit, such procedure might be tantamount to revoking the original authentication if, for example, the entire transcript was for a different accused than the one reflected on the cover sheet. Even in that event, however, by virtue of the certificate, reviewing authorities would be provided with a correct transcript of the trial proceedings, as required by law.

■ Turning to the facts before us, there is no indication that the military judge's action in purporting to withdraw his authentication was an attempt to correct an inaccuracy in the record. The judge's letter to this Court points out no error in the authenticated transcript but suggests, at most, an error in the pretrial proceedings which might have effected the accused's due process rights. Even if this matter had come to the military judge's attention *prior* to authentication, he would not have been excused from authenticating the record of trial proceedings. Arguably, at such time, the option would have existed for the judge to hold a post-trial hearing to develop the facts necessary to determine whether the accused had been prejudiced or otherwise denied due process. *See, e.g., United States v. Cooper*, 5 M.J. 850 (A.C.M.R.1978). However, once the record was transmitted to the convening authority, the military judge was without power to *sua sponte* conduct further trial proceedings. The trial judge was, in short, without either statutory or inherent power to remedy the perceived wrong.[10]

Appellate defense counsel do not contend that a flaw exists in the transcript of the trial proceedings as transmitted by the mili-

---

7. In the event that a verbatim transcript is not possible, MCM 1969 (Rev.) para. 82*i*, or not required, MCM 1969 (Rev.) para. 83*b*, a sufficient summary to determine whether the court had jurisdiction over cognizable offenses and whether a rehearing should be authorized, or an otherwise sufficient summarized record must be prepared by the trial counsel. The military judge has no discretion in determining whether or not to authenticate the summarized transcript. He is required to do so, although he has discretion in determining that the content of such a summary accurately describes the essential trial events.

8. There is no indication in this case that any fraud was perpetrated upon the military judge *qua* authenticating official, and thus we need not consider the effect of a fraudulently induced authentication.

9. *See*, MCM 1969 (Rev.), para. 95. In *United States v. Mabazza*, after affirmance by this Court, 3 M.J. 973 (A.F.C.M.R.1977), it was discovered that part of the proceedings, amounting to 15 pages of transcript, had not been transcribed, 4 M.J. 79 (C.M.A.1977). A certificate of correction was authorized, 4 M.J. 81 (C.M.A.1977), and the case was again affirmed. *United States v. Mabazza*, 5 M.J. 660 (A.F.C.M.R.1978), *pet. denied*, 6 M.J. 6 (C.M.A.1978).

10. Unlike the procedure extant in most jurisdictions, the trial judge in the military does not have authority to entertain or rule upon a petition for new trial. *See, e.g.*, Fed.R.Crim.Proc. 33. That responsibility is specifically reposed in The Judge Advocate General, or the appellate courts. Article 73, UCMJ, 10 U.S.C. § 873.

tary judge to the convening authority. If prejudicial error exists in the accused's case, it did not occur within the trial proceedings before the military judge. Rather, the error, if there be any, exists in the pretrial referral process, which was not in issue during the accused's trial.[11]

In view of the foregoing, we hold that the trial judge exceeded the scope of his authority in purporting to withdraw his authentication of the transcript. Accordingly, the record of trial remains duly authenticated, and the action of the convening authority, approving the accused's conviction, remains in full force and effect.

By our holding we do not intend to imply that the military judge was powerless to act, or that the accused is without remedy. Indeed, the military judge was duty-bound to act, and the accused has available a statutory remedy.

The military judge, or any other person discovering that a fraud may have been perpetrated upon a court-martial, should report the relevant facts to appropriate individuals and authorities. In effect, such a report was made, since both the parties, and all those responsible for review of the accused's case were duly informed of the alleged impropriety in the processing of the accused's case. Upon examination of the affidavits transmitted to us by the military judge we are not quite sure as to the precise nature of the alleged impropriety. Specifically, the affidavits before us do not indicate whether the immediate commander actually recommended trial before the case was referred to trial and simply neglected to sign the letter of transmittal, or whether, in signing another letter of transmittal allegedly fabricated after trial, he merely acquiesced in the accused's trial by court-martial as *fait accompli*. Likewise, we have not received from counsel for either side a legal brief as to the effect of an unsigned transmittal letter upon the ensuing referral and trial of charges against an accused, and upon the due process rights of that accused.

Having determined that we have before us a validly authenticated verbatim transcript of the accused's court-martial, and a bare allegation of possible impropriety in the processing of that case to trial, we cannot do other than to again affirm the accused's conviction and sentence. If the accused has been denied due process, or the trial court was without jurisdiction to proceed, the appropriate procedure for gaining consideration of such wrong is a petition for new trial. Article 73, Uniform Code of Military Justice.

Accordingly, we will delay again affirming the accused's conviction for 30 days from the date of this opinion,[12] during which time accused's counsel may file, if they find such warranted, an appropriate petition and brief on his behalf, with such supporting evidence as they find material. *See*, MCM 1969 (Rev.), para. 109e.

POWELL, Senior Judge, and KASTL, Judge, concur.

---

11. During the preliminary proceedings at trial, the trial counsel did indicate that the charges had been forwarded with recommendation for disposition by the immediate commander. Whether or not that representation was correct, we presume that it was made in good faith. *See*, A.B.A. Standards, The Prosecution Function, § 2.8(a).

12. We do not purport to limit the two-year statutory time to file such petitions; however, if such petition is not forthcoming within the aforementioned thirty-day period, then any petition for new trial will be considered and acted upon by The Judge Advocate General, or the Court of Military Appeals, as provided by Article 73, UCMJ.