UNITED STATES, Appellee,

v.

Clemente G. HERNANDEZ, Jr., Private,
U.S. Marine Corps, Appellant.

No. 65,919.

NMCM 90–2623.

U.S. Court of Military Appeals.

Argued June 3, 1991.

Decided Sept. 12, 1991.

For Appellant: *Captain Dwight H. Sullivan,* USMC (argued).

For Appellee: *Major Rose Marie Favors,* USMC (argued); *Commander Thomas W. Osborne,* JAGC, USN (on brief).

*Opinion of the Court*

EVERETT, Senior Judge:

The issue before this Court concerns the validity of a waiver of appellate review executed by Private Hernandez prior to the convening authority's action on his case. We hold that, because the purported waiver did not comply with the Uniform Code of Military Justice, it had no legal effect, so appellant was entitled to appellate review by the United States Navy–Marine Corps Court of Military Review and, thereafter, to submit a petition for review to this Court.

I

On December 6, 1989, Hernandez was tried by a military judge sitting as a special court-martial at the Marine Corps Air Station, New River, Jacksonville, North Carolina, on a charge of larceny of military property, in violation of Article 121, UCMJ, 10 USC § 921. After appellant had entered pleas of guilty pursuant to a pretrial agreement, the military judge found him guilty and conducted sentencing proceedings. The defense offered two witnesses in mitigation, and Hernandez made an unsworn statement, during which he stated that he wanted "very badly" to remain in the Marine Corps.

The military judge sentenced appellant to confinement and forfeiture of $466 pay per month for 3 months, and a bad-conduct discharge. However, the judge added:

[I]n view of the accused's statement that he wishes to remain a Marine, and the fact that two supervisors testified in his behalf, I recommend that the convening

authority suspend the discharge for whatever period he deems appropriate. I state that, although I do believe that a discharge is appropriate in this case. The accused's statement in the courtroom that he wish[es] to remain a Marine should be considered by the convening authority, and that if the accused does not, or does rather, I should say, perform well in the confinement facility, the convening authority should give strong consideration to the suspension.

I would like you to make sure that that's brought to the attention of the convening authority, defense counsel.

Appellate exhibit III to the record of trial—headed "Appellate Rights—Special Court–Martial With A Bad Conduct Discharge"—sets forth various appellate rights and also recites:

> You may waive appellate review, giving up the foregoing rights, or you may withdraw your case from appellate review at a later time. Once you file a waiver or withdrawal, your decision is final and appellate review is barred.
>
> If you waive or withdraw appellate review, your case will be reviewed by a judge advocate for certain legal errors. You may submit, in writing, suggestions of legal error for consideration by the judge advocate, who must file a written response to each. The judge advocate's review will be sent to the general court-martial convening authority for final action. Within two years after such final action, you may request the Judge Advocate General to take corrective action in your case. The two year period may be extended for good cause.
>
> You have the right to the advice and assistance of counsel in exercising or deciding to waive your post-trial and appellate rights.

A receipt for this document was signed by Hernandez on December 4, 1989—2 days *before* trial—with his defense counsel as a witness.

The staff judge advocate's recommendation to the convening authority, dated March 8, 1990, summarizes the offense; notes the sentence adjudged; refers to the clemency recommendation of the military judge; comments that no post-trial matters, as authorized by RCM 1105, Manual for Courts–Martial, United States, 1984, were submitted by the defense; and reviews appellant's service record. As an additional matter, the recommendation states that "[t]he accused waived his right to post-trial appellate review on 6 December 1989."

On April 10, 1990, Colonel Hooton, the convening authority, issued a special court-martial order which announced the results of trial, approved the sentence, summarized appellant's "conduct record during his current enlistment," and forwarded the record of trial "to the Joint Law Center, Marine Corps Air Station, New River, Jacksonville, North Carolina, for review by a Judge Advocate pursuant to the Uniform Code of Military Justice, Article 64."

On July 25, 1990, a Staff Judge Advocate's Advice Prior To Execution Of Punitive Discharge was prepared for the Commanding General, Second Marine Aircraft Wing. In this document it was noted under "Status of Appellate Review": "On 6 December 1989, [Hernandez] executed a Waiver of Appellate Review" and that, "[o]n 6 January 1990, [he had] executed a Waiver of Clemency Review to the Naval Clemency and Parole Board." Execution of appellant's punitive discharge was recommended.

This recommendation was approved by Major General R. A. Gustafson, Commander of the Second Marine Aircraft Wing, by supplementary special court-martial order, which stated that Hernandez had "executed a Waiver of Appellate Review," as well as "a Waiver of Clemency Review." The order also recited:

> The provisions of the Uniform Code of Military Justice, Articles 64 and 71(c)(2), have been complied with and the foregoing conviction is final in the sense of the Uniform Code of Military Justice, Articles 44 and 76.

Despite this recital of the conviction's finality, the record of trial was transmitted

to the Court of Military Review which, on October 30, 1990, approved the findings and sentence. Thereafter, on December 26, 1990, Hernandez mailed to this Court a petition for grant of review of that decision; and his case was docketed here on December 31, 1990.

Meanwhile, on December 7, 1990, the Court of Military Review had entered an order with respect to 23 other cases which were pending before it. In that order, which returned each of the cases to the Judge Advocate General of the Navy for review under Article 64 of the Uniform Code, 10 USC § 864, the Court of Military Review gave this explanation:

Each of the above-captioned cases contains a waiver of appellate review but was, nonetheless, forwarded for appellate review pursuant to Article 66, Uniform Code of Military Justice, 10 USC § 866, and Rule for Courts–Martial (R.C.M.) 1203, Manual for Courts–Martial, United States, 1984, because the waiver of appellate review was deemed ineffective by reason of having been filed before the accused or defense counsel was served with a copy of the action of the convening authority, in presumptive violation of R.C.M. 1110(f)(1).

Although the phraseology of R.C.M. 1110(f), as a whole, appears to be restrictive, we are unable to discern any intent on the part of the drafters to restrict the availability of waivers of appellate review. The "window" apparently established by R.C.M 1110(f) results from what the drafters must have considered a logical opening on the front end—since, until the initial action is taken and published, no case can be positively identified as subject to appellate review—and a closing on the back end set for administrative purposes to allow cases to be forwarded by convening authorities within a reasonable time. Had the intent been to create technical barriers to waiver of appellate review, surely a succeeding right to withdrawal of appellate review would not have been provided.

We, therefore, hold that any waiver of appellate review filed before the accused or defense counsel is served with a copy of the initial action is deemed filed as of the day on which the accused or defense counsel is served with a copy of the initial action, and that such a waiver, if otherwise properly executed and filed, is valid and effective. It follows that, with respect to each of the above-captioned cases, appellate review has been waived, and that this Court is without jurisdiction to review it.

32 MJ 808, 809.

Then, on January 10, 1991, the Court of Military Review entered an order in appellant's case wherein it recited that Hernandez had "waived appellate review . . . on 6 December 1989"; that "the documentation for said waiver was not attached to the record of trial"; that the case had been reviewed; and that, because of the waiver, that court "lacked jurisdiction to review the case." Therefore, this order withdrew the October 30, 1990, decision, which lacked "legal force or effect for want of jurisdiction," and remanded the record "to the Judge Advocate General for appropriate action, including publishing notice of this order to the appellant."

In the supplement to appellant's petition for grant of review, his appellate defense counsel assigned an issue questioning the effect of the waiver of appellate review; and we granted review of this issue:

WHETHER A WAIVER OF APPELLATE REVIEW EXECUTED BEFORE THE CONVENING AUTHORITY TAKES ACTION ON A CASE DEPRIVES THIS HONORABLE COURT OF JURISDICTION.

Clearly, the answer must be in the negative.

## II

■ At the outset, we must express doubt that the court below retained any jurisdiction on January 10, 1991, to enter an order of any kind concerning appellant's case. The petition for grant of review had already been filed in this Court; and this filing divested the court below of jurisdiction over the case. Art. 67, UCMJ, 10 USC

§ 867; *see* Rule 19(a) and (b), Courts of Military Review Rules of Practice and Procedure, 22 MJ CXXXIV; *United States v. Eubank,* 12 MJ 752, 754 n. 1 (AFCMR 1981). *See Stone v. United States Army Court of Military Review,* 21 MJ 152 (CMA 1985). Jurisdiction could be regained only by a remand from our Court; and, without such a remand, the order of January 10, 1991, was a nullity. Nonetheless, because the specified issue probably is presented in at least 23 other cases, we believe it appropriate to discuss the subject of waivers of appellate review.

■ Prior to enactment of the Military Justice Act of 1983, Pub.L.No. 98–209, 97 Stat. 1393, such waivers were not permitted; and automatic review of a case took place under Article 66(b) of the Code, 10 USC § 866(b) (1982), if the sentence included a punitive discharge or as much as a year's confinement.

In 1983, however, Congress was persuaded that some provision should be made to accommodate court-martialed servicemembers who were eager to be separated immediately—albeit, with a punitive discharge—and whose continued retention in the service hinders the military mission. Therefore, it was provided in new Article 61, UCMJ, 10 USC § 861:

(a) In each case subject to appellate review under section 866 or 869(a) of this title (article 66 or 69(a)), except a case in which the sentence as approved under section 860(c) of this title (article 60(c)) includes death, the accused may file with the convening authority a statement expressly waiving the right of the accused to such review. *Such a waiver shall be signed by both the accused and by defense counsel and must be filed within 10 days after the action under section 860(c) of this title (article 60(c)) is served on the accused or on defense counsel.* The convening authority or other person taking such action, for good cause, may extend the period for such filing by not more than 30 days.

(b) Except in a case in which the sentence as approved under section 860(c) of this title (article 60(c)) includes death, the accused may withdraw an appeal at any time.

(c) A waiver of the right to appellate review or the withdrawal of an appeal under this section bars review under section 866 or 869(a) of this title (article 66 or 69(a)).

97 Stat. 1398 (emphasis added).

The statutory language seems perfectly clear and, given its most obvious reading, would seem to mean that a waiver must be filed only within a 10–day period after the convening authority has acted and this action has been served upon the accused or on defense counsel. The legislative history conforms with this construction, because it states that "the decision as to whether the case should be appealed will not be made by the accused until after the convening authority takes his action." S.Rep. No. 53, 98th Cong., 1st Sess. 22 (1983).

The language of RCM 1110(f)—which was promulgated soon after enactment of the Military Justice Act of 1983—is even more restrictive and states, "The accused may file a waiver of appellate review *only* within 10 days after the accused or defense counsel is served with a copy of the action under RCM 1107(h)." (Emphasis added.)

There are several sound policy reasons which support the legislative choice. The guilty findings and the adjudgment of the sentence may be a very traumatic event for an accused; and, as a result, a "cooling off" period is appropriate so that he may decide rationally and without undue emotion or resentment what to do. The delay until after the convening authority has acted provides this opportunity to reflect calmly on the potential adverse effects of the conviction and sentence and to decide whether to proceed with an appeal.

Secondly, until the convening authority has acted, an accused is not in the best position to make an informed choice as to whether to pursue an appeal. Indeed, the action of the convening authority may surprise the accused and present grounds for appeal that he never anticipated. *Cf. Waller v. Swift,* 30 MJ 139 (CMA 1990).

Finally, it seems clear that Congress wished to assure that a court-martial produce an accurate result and not merely one that an accused is willing to accept. Thus, for instance, Article 45(a), UCMJ, 10 USC § 845(a), requires that a guilty plea be set aside under circumstances when such a plea could be accepted in most civilian courts. If an appeal can be waived too easily and without full consideration by the accused of the consequences, the danger is posed that the waiver may be improvident—perhaps as part of a formal or informal agreement with the Government—and that an accused who, correctly or incorrectly, believes himself to be innocent or to have been unjustly sentenced will decide not to challenge the conviction and sentence on appeal.

Appellate government counsel have suggested some policy arguments which they believe call for a different result. They observe that it may be inconvenient to delay submission of a waiver until after service on the accused of the action by the convening authority. By that time, the accused and his defense counsel may be far apart; and it may be very difficult for the accused to get advice from his counsel. Although we recognize that the delay to await convening authority action may be inconvenient for some accused as well as for the military establishment and may reduce the number of waivers, we are sure that an accused still will have available some reliable source of advice about whether to exercise his appellate rights. *See generally United States v. Palenius*, 2 MJ 86 (CMA 1977).

Appellate government counsel also point out that Article 61 places no time limitation on withdrawal of an appeal. However, withdrawal of an appeal cannot take place for some time after an accused's trial; and, by then, the traumatic effects of the findings and sentence will have lessened considerably. Moreover, withdrawal of an appeal occurs under judicial supervision, which provides some safeguards against improvident action by an accused; and the accused will have enjoyed ample opportunity to obtain qualified legal advice by the time he undertakes to withdraw the appeal. Indeed, the very circumstance that an appeal can be withdrawn later reduces the need to uphold hasty waivers soon after trial.

Of course, the conclusive answer to the Government's contentions is that Congress decided to impose limitations on the waiver of appellate rights. This legislative decision having been made, neither the Court of Military Review nor our Court is empowered to ignore or undercut it. Indeed, instead of complaining about restrictions on waiver of appellate rights, the Government should be rejoicing that, since 1983, Congress has granted some leeway for an accused's waiver or withdrawal of an appeal.

### III

The order entered by the United States Navy–Marine Corps Court of Military Review on January 10, 1991, is set aside. The record of trial is returned to the Judge Advocate General of the Navy for remand to that court for further review, where Hernandez will be represented by appellate defense counsel.

Supplementary Special Court–Martial Order No. 32–90, issued by Second Marine Aircraft Wing on July 26, 1990, is hereby set aside.

Chief Judge SULLIVAN concurs.

COX, Judge (concurring):

It seems ironic that prior to trial an accused, by a knowing waiver, may give up substantial constitutional and statutory rights such as the right to counsel or the right to a trial on the merits by court-martial, but he cannot give up the right to appeal until after the convening authority has approved the findings and sentence. Indeed, an accused may enter into a plea agreement in advance of trial which insures that his sentence will have a maximum limitation. And, in military practice, he may "beat the deal" if the court-martial members or military judge sentence him to a lesser sentence. Notwithstanding the fact that an accused has agreed to plead

guilty and has received either the sentence that he bargained for or a lesser sentence, his case is automatically appealed either to a Court of Military Review or to the Judge Advocate General of the respective service. Arts. 66 and 69, Uniform Code of Military Justice, 10 USC §§ 866 and 869, respectively.

Except in certain classes of cases such as those involving the death penalty, appeals of military convictions are exact opposites of appeals of civilian criminal convictions. Civilian jurisprudence requires an accused who desires to appeal his conviction or sentence to make an *affirmative* election to appeal. Generally, if an accused fails to appeal within certain time constraints, his lack of action is fatal to an appeal because the appellate court loses jurisdiction. Fed. R.App.P. 4. *See United States v. Anna,* 843 F.2d 1146 (8th Cir.1988). A military accused must make a *negative* election not to appeal. However, in either case, there is nothing to appeal until the conviction and sentence become final.

Thus, for the reasons articulated by Senior Judge Everett, I agree that an accused cannot waive the automatic appeal until his conviction and sentence have been approved. In civilian practice there is nothing to appeal until the judgment is entered; in military practice there is nothing to waive until the convening authority has acted.