UNITED STATES, Appellant

v.

Jimmy B. SMITH, Airman, U.S.
Air Force, Appellee.

No. 95–5003.
Crim. App. No. 30513.

U.S. Court of Appeals for
the Armed Forces.

Argued Jan. 31, 1996.

Decided Aug. 30, 1996.

For the Accused: *Captain W. Craig Mullen* (argued); *Colonel Jay L. Cohen* and *Cap-*

*tain J. Knight Champion III* (on brief); *Lieutenant Colonel Joseph L. Heimann.*

For the United States: *Major LeEllen Coacher* (argued); *Colonel Jeffery T. Infelise* and *Major Barnard N. Madsen* (on brief); *Colonel Thomas E. Schlegel.*

## Opinion of the Court

SULLIVAN, Judge:

On December 30, 1992, Airman Jimmy B. Smith was tried by a general court-martial composed of a military judge sitting alone at Hill Air Force Base, Utah. He pleaded guilty to assault and battery of JC, the wife of another servicemember, in violation of Article 128, Uniform Code of Military Justice, 10 USC § 928. He was found guilty of this offense by exceptions and substitutions, and sentenced to a bad-conduct discharge, confinement and forfeiture of $500 pay per month for 4 months, and reduction to the lowest enlisted pay grade. The convening authority approved the sentence on March 11, 1993. The Court of Criminal Appeals on April 5, 1995, set aside the findings of guilty in this case and authorized a rehearing. Unpub. op. at 5.

On June 12, 1995, pursuant to a motion to file out-of-time being granted, the Judge Advocate General of the Air Force certified two questions to this Court under Article 67(a)(2), UCMJ, 10 USC § 867(a)(2) (1989). He asks:

## I

WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS ERRED IN FINDING APPELLANT'S WAIVER/WITHDRAWAL FROM APPELLATE REVIEW WAS INVALID.

## II

WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS ERRED IN FINDING APPELLANT'S PLEA OF GUILTY IMPROVIDENT.

We agree with the appellate court below that Airman Smith's waiver/withdrawal from appellate review was legally invalid. *See United States v. Hernandez*, 33 MJ 145 (CMA 1991). On the merits, however, we disagree

with its holding that his pleas of guilty were improvident as a matter of law. *See United States v. Smauley*, 42 MJ 449 (1995); *cf. United States v. Smith*, 60 F.3d 595, 597, 599 (9th Cir.1995) (guilty pleas invalid where no discussion whatsoever as to nature of charge).

The appellate court below summarized the facts pertinent to the first certified issue, as follows:

A brief review of the tortuous post-trial administrative processing of this case is necessary to set the stage for our further comments. Appellant's trial was on December 30, 1992 and the SJA recommendation [under Art. 60(d), UCMJ, 10 USC § 860(d) ] was completed on February 10, 1993. *On February 22, 1993 after consulting with counsel, appellant waived his right to submit clemency matters and respond to the staff judge advocate's (SJA) post-trial recommendation.* See Rules for Courts–Martial (RCM) 1105(d)(3), 1106(f)(6). *On the same day, he also submitted a DD form 2230* [sic] *a Waiver/Withdrawal of Appellate Rights in General and Special Courts–Martial Subject to Review by a Court of Military Review, which indicated that he withdrew appellate review.*

The March 4, 1993 SJA review [under Art. 64, UCMJ, 10 USC § 864] found no legal error in the appellant's "waiver of appellate rights." *On March 11, 1993, the convening authority approved the sentence* and ordered the bad-conduct discharge executed. Nonetheless, the case was forwarded for appellate review.

We further note that the record fails to indicate that the SJA recommendation or the SJA review were served on appellant and his defense counsel as required by RCM 1106(f)(1) and 1112(d). However, due to our resolution of other issues, we need not address these failures.

Appellate defense counsel initially asserted one error claiming that improper rehabilitation testimony was admitted. Following our initial review, we specified three issues concerning the providency of the plea, the validity of the findings by exceptions and substitutions, and the effect

of appellant's efforts to waive appellate review. We will consider the latter issue first, because if we determine appellant validly waived appellate review, we have no jurisdiction to review the case.

Unpub. op. at 2 (emphasis added).

We further note with respect to the certified issues certain uncontested facts. The accused was charged with assault in violation of Article 128, in a specification which states:

Specification: In that [the accused] did, at or near Hill Air Force Base, Utah, on or about 1 September 1992, unlawfully strike, *jerk, or beat [J.C.] on her* head, face, arms, torso, *back, and legs with his* fists, *hands [and ] feet,* head, and body.

The underlined language indicates what remained after the military judge entered exceptions and substitutions. *See* RCM 918(a)(1), Manual for Courts–Martial, United States, 1984 (Change 3, 1987).

The record of trial shows the following discussion between the military judge and the accused concerning his guilty pleas:

MJ: Do you have any questions about the elements? [PREVIOUSLY READ TO ACCUSED]

ACC: No, sir.

MJ: And do you believe and admit that those elements, taken together, correctly describe what you did?

ACC: Yes, sir.

MJ: Let's go ahead and discuss this incident in more detail then. It is alleged that this occurred on or about the 1st of September 1992. Is that accurate?

ACC: Yes, sir.

MJ: Do you remember what day of the week that was?

ACC: A Monday or a Tuesday, sir. I'm not sure.

MJ: Where did this event occur?

ACC: At 3356A Liberty Drive on Hill Air Force Base.

MJ: What time of day or night was that?

ACC: Early in the morning; probably around seven or eight o'clock.

MJ: About 0700 to 0800?

ACC: Yes, sir.

MJ: Was that a duty day for you?

ACC: Yes, sir.

MJ: Were you living there at the time?

ACC: No, sir.

MJ: Whose place was this?

ACC: [JC]'s, sir.

MJ: What actually occurred? I mean, it is indicated that you did a lot of things here with fist, hands, et cetera, et cetera. What led up to this fight or altercation or assault and battery?

ACC: We had been involved for quite a while and she had been talking about getting a divorce from her husband. And I found out that nothing had been done for the divorce and I told her I wanted to back out. She struck me after I said that. *She slapped me across the face, after which time we got into a verbal argument. I said some things that she didn't like. I was calling her names. She continued to hit me. I pushed her away on several occasions, harder than I should have. On a couple of those occasions she did fall into a bed post or on the floor.*

MJ: Did she seem injured to you? I mean, was she injured at all that you could see? Was she bleeding or anything like that?

ACC: She was not bleeding, sir.

MJ: Did she scream or holler that she was hurt?

ACC: No, sir.

MJ: This was her house. Is that right?

ACC: Yes, sir.

MJ: Where were you? In the bedroom, or just all throughout the house or what?

ACC: It went from the living room to the bedroom, sir.

MJ: And she pushed you on occasions—Or she slapped your face, I guess. Right?

ACC: Yes, sir.

MJ: *And then you pushed her back?*

ACC: *Yes, sir.*

MJ: *Did you strike her at any time?*

ACC: *In the back, sir.*

MJ: How about on or about her head or around her face?

ACC: No, sir.

MJ: How about on her arms?

ACC: *No, sir. I grabbed her arms.*

MJ: *You grab[bed] her arms?*

ACC: Yes, sir.

MJ: What about on her body?

ACC: No, sir.

MJ: How about her legs?

ACC: *I kicked her legs away from the baby at one occasion.*

MJ: From what?

ACC: Her baby that was on the floor close by.

MJ: *You kicked [J]'s legs, did you say?*

ACC: *Yes. She was trying to kick me, so I kicked her legs away so she wouldn't hit the baby.*

MJ: Were you in fear for your life or physical injury from [JC]?

ACC: No, sir.

MJ: *So, you remember hitting her on her back and kicking her on her legs?*

ACC: *Yes, sir.*

MJ: Did you jerk her around at all? You indicated that you grabbed her arms.

ACC: *Whenever she was trying to hit me, sir, I grabbed her arms and held her arms so she couldn't.*

MJ: Okay. And what were you using to do this? You say you grabbed her on one occasion, or sometimes grabbed her by her arms to hold her down, and you did kick her legs you remember. Did you strike her or touch her with any other parts of your body that you re-member?

ACC: No, sir.

MJ: *You say you pushed her with more force than you thought was necessary or than you should have. What do you mean by that?*

ACC: *Looking back on it now, I pushed her away quite hard on a couple of occasions.*

MJ: And you noticed that she fell into the bed post?

ACC: Yes, sir.

MJ: What part of her body did she strike when she fell onto the bed?

ACC: *Her back, and to the best of my recollection her shin hit the rim of the bed.*

MJ: Chin or shin?

ACC: Yes, sir.

MJ: Chin?

ACC: Lower leg.

MJ: Oh, her shin; excuse me. Do you feel that you had any legal justification or authority to strike her or to kick her?

ACC: No, sir.

MJ: *And you indicated that you didn't feel that you were acting in self-defense, as it were, and you weren't in fear o[f] your life or bodily injury, were you?*

ACC: *My life, no, sir. I didn't want to be hit by her.*

MJ: But you could have left, I mean?

ACC: Yeah, I could have walked out.

MJ: And it was her house?

ACC: Yes, sir.

MJ: Do you recall ever hitting her with your fists?

ACC: No, sir.

MJ: Captain Garner, is there any issue of mental responsibility in this case, as far as you know?

DC: There is none, Your Honor.

MJ: Is there a pretrial plea agreement in the case?

TC: Your Honor, at this time, the Govern-ment is—There is a pretrial agreement, Your Honor, but our concern is the pro-vidency of the plea at this point.

MJ: If you have some concerns about that, do you feel there are other areas con-cerning the elements that I should ex-plore further with Airman Smith?

TC: Your Honor, it is my understanding that the accused has admitted to kicking the legs of Mrs. [C], of jerking her around forcibly, pushing her into a bed post during an argument.

The question about—As I read the charge, it says, unlawfully strike, jerk, or beat [C] on her head, arms torso, back, and legs with his fists, hands, feet, head, and body. Your Honor, would it be proper then that we've shown, essen-tially, at least that he has struck and jerked Mrs. [C] at least as to—I think, also, the blows to the back admitted as

well, and legs, with at least his feet and hands. I guess it's all there.

MJ: *Yes. I would be convinced based on what he told me that Airman Smith committed an assault and battery by, at least jerking or beating [JC]. on her back and legs with his hands and feet.*

TC: Yes, Your Honor. That's consistent with—That addresses our concerns, Your Honor. Thank you.

(Emphasis added.)

———

█ The first certified issue questions the correctness of the Court of Criminal Appeals' decision holding legally invalid Airman Smith's purported waiver/withdrawal of appellate review on February 22, 1993. We agree with the appellate court below. Airman Smith's request for waiver/withdrawal of appellate review was submitted prior to the convening authority's action taken in his case on March 11, 1993. Accordingly, under our case law construing and applying Article 61, UCMJ, 10 USC § 861 (1983), we conclude that this waiver of appellate review was premature and thus legally invalid. *See United States v. Hernandez,* 33 MJ 145 (CMA 1991); *United States v. Smith,* 34 MJ 247, 249 (CMA 1992); *see also United States v. Walker,* 34 MJ 317 (CMA 1992).

█ The dissenting judge in the Court of Criminal Appeals challenged the majority decision in this case which relied on our decision in *Hernandez.* He generally decried "such a hypertechnical interpretation of the appellate review waiver provisions in this case." Unpub. op. at 5. Furthermore, equating Article 61(a) with RCM 1110, he concluded RCM 1110(f) as amended by Change 5 (effective July 6, 1991) established "only an outside time deadline for filing of a waiver," not a 10-day window within which the waiver had to be filed. Unpub. op. at 8. In the alternative, he concluded that the substantial-compliance provision of RCM 1110(g)(4) would preclude Airman Smith's case from further judicial review. Unpub. op. at 8–9. We disagree on all counts.

Article 61 states:

**§ 861. Art. 61. Waiver or withdrawal of appeal**

(a) In each case subject to appellate review under section 866 or 869(a) of this title (article 66 or 69(a)), except a case in which the sentence as approved under section 860(c) of this title (article 60(c)) includes death, the accused may file with the convening authority a statement expressly waiving the right of the accused to such review. *Such a waiver shall be signed by both the accused and by defense counsel and must be filed within 10 days after the action under section 860(c) of this title (article 60(c)) is served on the accused or on defense counsel.* The convening authority or other person taking such action, for good cause, may extend the period for such filing by not more than 30 days.

(b) Except in a case in which the sentence as approved under section 860(c) of this title (article 60(c)) includes death, the accused may withdraw an appeal at any time.

(c) A waiver of the right to appellate review or the withdrawal of an appeal under this section bars review under section 866 or 869(a) of this title (article 66 or 69(a)).

(Emphasis added.) The language that Congress chose to permit these waivers is both precise and particular. While the dissenting judge below may criticize Congress' decision in this matter, he may not ignore its command or our decisions applying this statute. *See generally United States v. Jones,* 23 MJ 301, 302 (CMA 1987).

The dissenting judge below, recognizing our 1991 decision in *Hernandez,* suggests that Change 5 to RCM 1110(f) (effective July 6, 1991) somehow superceded it. We note that at the time the waiver was signed and submitted in *Hernandez,* RCM 1110(f) stated:

(f) *Time limit.*

(1) *Waiver.* The accused may file a waiver of appellate review only within 10 days after the accused or defense counsel is served with a copy of the action under RCM 1107(h). Upon written application of the accused, the convening authority may

extend this period for good cause, for not more than 30 days.

At the time of Smith's waiver in February of 1993, however, that Rule for Court–Martial read:

(1) *Waiver*. The accused may sign a waiver of appellate review at any time after the sentence is announced. The waiver must be filed within 10 days after the accused or defense counsel is served with a copy of the action under RCM 1107(h). Upon written application of the accused, the convening authority may extend this period for good cause, for not more than 30 days.

■ The dissenting judge's argument, however, is deserving of short shrift. It is beyond cavil that the President cannot abrogate a statute passed by Congress in matters related to military justice. *See United States v. Smith*, 13 USCMA 105, 119, 32 CMR 105, 119 (1962). In any event, even the amended Manual rule, cited by the dissenting judge below, provides for *filing* of a request for waiver of appellate review in the same language used in the statute. Accordingly, wishful thinking aside, our case law still stands for the reasons articulated by Senior Judge Everett in *United States v. Hernandez, supra*. Moreover, in view of the reasons for Article 61, posited by Senior Judge Everett in *Hernandez*, we consider the post-convening-authority-action-filing requirement fundamental and its violation substantial. *Id.*; *see also United States v. Smith*, 60 F.3d at 599–600. We now proceed to the merits of this appeal.

■ The second issue before us concerns the providence of Airman Smith's pleas of guilty to assault on Mrs. C, the wife of another servicemember. The appellate court below set aside his pleas of guilty to this offense on the basis that the military judge failed to fully explain the principles of self-defense and defense-of-another to him before accepting his plea. *See generally* RCM 916(e). Based on the record before it, the Court of Criminal Appeals concluded that such legal error required reversal of Airman Smith's conviction. We disagree.

RCM 910(c) states in pertinent part: "Before accepting a plea of guilty, the military judge shall address the accused personally and inform the accused of, and determine that the accused understands ...: (1) The nature of the offense to which the plea is offered[.]" Such a duty for the military judge is consistent with Supreme Court precedent on the due process requirements for accepting valid guilty pleas. *See Henderson v. Morgan*, 426 U.S. 637, 645 n. 13, 96 S.Ct. 2253, 2257 n. 13, 49 L.Ed.2d 108 (1976) (voluntariness of plea requires understanding of "true nature" of charge to which one pleads guilty). Moreover, it is consistent with the direction of Article 45(a), UCMJ, 10 USC § 845(a), that military judges be vigilant in rejecting "irregular," "inconsistent," improvident or unintelligent guilty pleas. We have held that this responsibility includes the duty to explain to a military accused possible defenses that might be raised as a result of his guilty-plea responses. *United States v. Smauley*, 42 MJ 449, 450 (1995); *United States v. Clark*, 28 MJ 401, 405 (CMA 1989); *see United States v. Frye*, 738 F.2d 196, 199 (7th Cir.1984).

We conclude that Airman Smith's guilty-plea responses adequately reflect his understanding of the above defenses and as a whole established sufficient facts which precluded these defenses from applying in his case as a matter of law. *See United States v. Smauley*, 42 MJ at 452. First, his responses established that he and his girlfriend were engaged in a lover's quarrel which they both willingly escalated into a physical exchange of blows. *See United States v. O'Neal*, 16 USCMA 33, 36–37, 36 CMR 189, 192–93 (1966) (self-defense is "generally not available to one who engages with another in mutual combat"). Second, his responses made clear that at no time during this altercation with his girlfriend did he "fear ... physical injury" and he could not have reasonably feared such an injury. *See United States v. Sawyer*, 4 MJ 64, 65 (CMA 1977) (self-defense to simple fistic assault requires reasonable "apprehension of an injury less than death or grievous bodily harm"). Third, his responses clearly implied that he unnec-

essarily utilized excessive force in responding to the slap and hits of his girlfriend. *See United States v. Sawyer, supra; United States v. Perry,* 16 USCMA 221, 224, 36 CMR 377, 380 (1966) (self-defense to simple fistic assaults includes right to exercise same or similar force). Finally, the military judge expressly called Airman Smith's attention to the defense of self-defense in this case which is treated in a joint fashion with defense of another in RCM 916(e). *Cf. United States v. Smith,* 60 F.3d at 599 (error where "total failure" to explain nature of crime).

In conclusion, we agree with the appellate court below that the military judge's guilty-plea inquiry in this case was not a model to be emulated. Nevertheless, we are reluctant to strike down Airman Smith's pleas of guilty when the inquiry of the judge created a record that unquestionably established the accused's guilt as a matter of fact and law. In particular, we note that Airman Smith freely admitted numerous touchings of the victim by pushing and hitting her on the back that do not even implicate the appellate-raised defenses noted above. As recognized by the military judge, these touchings by themselves were sufficient to support his conviction for assault under Article 128. *See* Art. 59(a), UCMJ, 10 USC § 859(a).

The decision of the United States Air Force Court of Criminal Appeals is set aside. The record of trial is returned to the Judge Advocate General of the Air Force for resubmission to that court for further review under Article 66, UCMJ, 10 USC § 866.

Chief Judge COX, Judge CRAWFORD, and Senior Judge EVERETT concur.

GIERKE, Judge (dissenting):

I agree with resolution of the first certified issue. However, in my view the Court of Criminal Appeals correctly reversed the military judge as to the guilty plea. Therefore, I dissent. The "rescue mission" mounted by the majority to save this inadequate plea inquiry degrades the requirements of Article 45, Uniform Code of Military Justice, 10 USC § 845, and RCM 910, Manual for Courts-Martial, United States (1995 ed.), to a hollow ritual. The second certified question should be answered in the negative.

The majority characterizes the events as a mutual affray. This distorts the accused's responses during the plea inquiry. The accused told the military judge that his girlfriend slapped him first. He responded with insults. Then, "she continued to hit me." The accused's only admitted uses of physical force were when he struck her in the back while pushing her away, grabbed her arms to prevent her from striking him, and kicked her legs away from a nearby infant while she was trying to kick the accused.

The military judge attempted to patch up his defective inquiry by asking the accused for compound legal conclusions: whether he used "more force that [he] thought was necessary or than [he] should have"; and whether he "didn't feel that [he] was acting in self-defense" and he wasn't "in fear o[f] [his] life or bodily injury." When asked if he feared bodily injury or was acting in self-defense, the accused responded, "I didn't want to be hit by her." Finally, the military judge did not inquire into the possibility that the accused was acting in defense of the infant when he kicked his girlfriend's legs.

The accused's responses raised issues of self-defense and defense-of-another, both inconsistent with a guilty plea. Art. 45(a). The military judge should not have accepted the pleas unless the accused admitted facts—not legal conclusions—that negated the defense. RCM 910(e), Discussion. The Court of Criminal Appeals recognized the defects in the plea inquiry and properly held that the guilty pleas were improvident. *See United States v. M. C. Woods,* 22 USCMA 137, 46 CMR 137 (1973) (guilty pleas to voluntary manslaughter improvident where accused said was trying to defend himself).

There is no legal basis to overturn the decision of the court below. The military judge's inquiry falls short of what Congress intended in Article 45, this Court required in *United States v. Care,* 18 USCMA 535, 40 CMR 247 (1969), and the President intended in promulgating RCM 910. Accordingly, I dissent.