UNITED STATES, Appellee,

v.

Melanie R. BISCOE, Second Lieutenant, U.S. Air Force, Appellant.

No. 96–1166.
Crim.App. No. 31878.

U.S. Court of Appeals for
the Armed Forces.

Argued Oct. 9, 1997.

Decided Jan. 20, 1998.

Gierke, J., filed concurring opinion.

For Appellant: *Major Michael C. Barrett* (argued); *Lieutenant Colonel Kim L. Sheffield* and *Captain Harold M. Vaught* (on brief); *Colonel David W. Madsen* and *Colonel Douglas H. Kohrt.*

For Appellee: *Major Karen L. Manos* (argued); *Lieutenant Colonel Michael J. Breslin* and *Major LeEllen Coacher* (on brief); *Colonel Theodore J. Fink* and *Colonel Brenda J. Hollis.*

*Opinion of the Court*

SULLIVAN, Judge:

On September 26, 1995, appellant was tried by a military judge sitting alone as a general court-martial at Scott Air Force Base, Illinois. Consistent with her pleas, she was found guilty of absence without leave for approximately 1 month, in violation of Article 86, Uniform Code of Military Justice, 10 USC § 886. She was then sentenced to a dismissal, which the convening authority approved on November 1, 1995. On June 11, 1996, the Court of Criminal Appeals affirmed appellant's conviction in a short per curiam opinion.

On March 26, 1997, we granted review of the following issue:

WHETHER THE MILITARY JUDGE FAILED TO ADEQUATELY EXCLUDE THE POSSIBILITY OF DURESS AS AN AFFIRMATIVE DEFENSE TO APPELLANT'S ABSENCE WITHOUT AUTHORITY AND THEREBY RENDERED IMPROVIDENT APPELLANT'S PLEAS OF GUILTY TO THAT OFFENSE.

We hold that the military judge did not err in accepting appellant's pleas of guilty to this offense. *See United States v. Smith,* 44 MJ 387, 392 (1996).

The record of trial shows that appellant pleaded guilty to a single specification of unauthorized absence from December 19, 1994, to January 23, 1995. A stipulation of

fact was agreed to by appellant. It states, in pertinent part:

2. The Accused was absent from her duty section from on or about 19 December 1994 until on or about 23 January 1995. The Accused's duty section was Ward 5B, Building 1530, Scott AFB, Illinois. The Accused had a duty to be at her duty section on 19 December 1994. The Accused knew of this duty to be present at her duty section.

3. The Accused's absence from her duty section was without authority. On 19 December 1994, at approximately 0800 hours, the Accused telephoned her supervisor, Lt Col Chesnick, and complained of extreme stress and asked to file sexual harassment charges. Lt Col Chesnick told the Accused to report to work several times and told the Accused they would discuss the sexual harassment charge as soon as she reported for duty. The Accused called back at approximately 0810 hours and asked for regular or emergency leave. Lt Col Chesnick denied this request.

4. The Accused believed she was being sexually harassed at work. The Accused believed this harassment went beyond the duty section into her own home. The Accused filed an Inspector General (IG) complaint concerning this sexual harassment but the investigation concluded there was no evidence of sexual harassment. The Accused suffers from and has been diagnosed by military and civilian mental health officials as having the Axis I personality disorders of Major Depression and Adjustment Disorder with Anxiety.

5. During the Accused's absence she traveled to her home town of Billings, Montana. Once there she sought out civilian psychiatrists to help her cope with her stress and anxiety. As a result of these counseling sessions, she was prescribed anti-depressant and anti-anxiety medications.

6. The Accused returned to Scott AFB and voluntarily surrendered herself to military authority on 23 January 1995. She was immediately placed into pretrial confinement and kept in confinement until 3 April 1995.

The record of trial also shows that the military judge questioned appellant about her sexual harassment claim. It contains the following discussion between the military judge, appellant, and defense counsel:

MJ: The Stipulation also states that on the 19th of December 1994, at about eight o'clock in the morning, you telephoned your supervisor, Lt Colonel Chesnick, and complained of extreme stress and asked to file sexual harassment charges—is that correct?

ACC: Yes, sir.

MJ: *Okay, and that Lt Colonel Chesnick told you to report to work several times, and then told you that the two of you would discuss the sexual harassment charge as soon as you reported to duty—is that correct?*

ACC: *Yes, it is.*

MJ: Now Lt Colonel Chesnick was the charge nurse?

ACC: Yes.

MJ: And your immediate supervisor?

ACC: No, Captain, Major Hinton was my immediate supervisor.

MJ: Okay, and then Lt Colonel Chesnick was the—

ACC: The Chief of Medical Operations Squadron.

MJ: Okay. The Stipulation then states that you called back at approximately 0810 hours and asked for regular or emergency leave. Did you do that?

ACC: Yes, sir.

MJ: And that Lt Colonel Chesnick denied this request. Did she do that?

ACC: Yes.

MJ: *Okay. Now, paragraph four of the Stipulation of Fact tells the court that you believed you were being sexually harassed at work—is that correct?*

ACC: *Yes, sir.*

MJ: *And that you believed this harassment went beyond the duty section into your own home. Is that also correct?*

ACC: *Yes, sir.*

MJ: Okay. *And that you had filed an IG complaint concerning this sexual harassment, but the investigation concluded*

*there was no evidence of sexual harassment.* And the Stipulation then tells the court that you suffer from, and have been diagnosed by military and civilian mental health officials, as having the Axis I personality disorders of major depression and adjustment disorder with anxiety—is that correct?

ACC: Yes, sir.

* * *

MJ: ... Now, defense counsel, again, have you thoroughly researched all areas of the case?

DC: Yes, Your Honor, including the defenses of sanity, *duress,* and impossibility. *We have researched it, and discussed these thoroughly with our client.*

MJ: *Okay. And, then, your investigation has not revealed any facts which might give rise to such a defense in the case?*

DC: *That is correct, Your Honor.*

(Emphasis added.)

Later in the trial, appellant made an unsworn statement to the military judge. She said, *inter alia:*

Going AWOL was wrong, but a punitive discharge will be very detrimental in obtaining employment. I left because I just could not take it anymore. *My work place was a very stressful environment for me. I was being sexually harassed at my job. I realize that the IG investigator did not agree with this allegation, but the investigator did not interview my children who knew about the stress and harassment that I was having to put up with.*

*I strongly feel that I was sexually harassed. I was constantly approached by my supervisor, who was a major, and also a married lieutenant and an enlisted coworker asking me for dates. I refused to go out with any of them. This made it very difficult for me at work.*

I told my supervisor that I was having a very difficult time coping with the stress of my work environment, but she ordered me back to patient care. I could not understand this because I told her that I was not mentally able to cope with patients. She repeatedly told me to go to mental health. I refused because I was extremely dis-

tressed with the mental health here on base. I was finally ordered and escorted to mental health.

(Emphasis added.)

Thereafter, the military judge immediately questioned defense counsel about appellant's statement:

MJ: Very well. Prior to inviting argument from counsel, I do have a couple of questions I would like to ask of the defense counsel. I've heard the accused's unsworn statement, and she has read it to me, and obviously it has been prepared, and I would be correct in presuming that you've seen that statement since it has been prepared prior to this, but—and I'm not going to question the accused about her unsworn statement.

But now earlier, Captain Durkis, you assured the court, as did Captain Shestko, but I believe it was you who orally assured the court, that both had thoroughly researched and investigated all aspects of the case and that your investigation had revealed no affirmative defenses to this case. I inquired specifically as to mental responsibility. In fact, Prosecution Exhibit Number 2 has been admitted that clearly shows the accused is mentally responsible and was at the time of the commission of the offense and through her absence.

*But you also, I believe, assured me that you thoroughly looked into all areas of the case, including duress—*

DC: *Duress and impossibility, yes, sir.*

MJ: —and impossibility, and you determined that it did not exist.

DC: That is correct, sir. The affirmative defense of duress would have required a....

MJ: *Very well. So the accused was not trying to tell me that she was so sexually harassed as to constitute an impossibility defense or. ...*

DC: *That's right, Your Honor. It did not raise [sic] to a level where she feared for her life or the life of her children or for personal physical harm. That's correct.*

MJ: Captain Shestko?

IDC: Yes, Your Honor. We have researched this issue. We've spent a lot of

time on this. That was one reason why, back on the 25th of July or so when this court was initially set for the 5th of August, that the defense requested a delay until the 26th of September, so that Captain Durkis and I would have more time to consult with Lieutenant Biscoe and to do the research in this area.

After extensive research, we felt that the mitigation and extenuation in this case did not raise (sic) to the level of an affirmative defense.

MJ: Very well. And it's your position, then, that the matters that the accused has just advised me of in her unsworn statement would not affect the providence of the pleas?

IDC: That's correct, Your Honor. I do believe that those were things that should be brought before this court, but simply as mitigation and extenuation and not in any way [to] contradict the Stipulation of Fact or the plea itself.

MJ: Well, there are several cases, although not many, but a couple of cases, I believe, where one who has suffered from sexual harassment to a certain extent, that this would be a defense to the offense of absence without leave. Did your research lead you to look into those cases?

IDC: Yes, Your Honor.

DC: *Yes, I've thoroughly researched that. And the level to which that sexual harassment needs to go, to actual physical threatening, rape, and other issues, is not present in this case.*

MJ: *Okay, and you also concur with that, Lieutenant Biscoe?* I'm not trying to question you about your unsworn statement at all, but you are familiar with that area of the law that I've been having this discourse with your counsel on?

(ACC and DC conferred.)

MJ: Do you want a few more minutes to discuss this, counsel? I'll be happy to recess—

DC: That will probably be best, Your Honor.

MJ: We'll take a ten-minute recess at this time. Will that be enough time?

DC: That should be, Your Honor.

MJ: Okay.

(The court-martial was recessed at 1416 hours, 26 September 1995, and was called back to order at 1433 hours, 26 September 1995. All parties were again present.)

MJ: Very well, counsel, I did grant the recess at the time. Have you had enough time to discuss the situation with Lieutenant Biscoe?

DC: Yes, Your Honor.

MJ: And, defense counsel, what's your position as to the providency of the pleas?

DC: We still believe the providency is good.

MJ: *Very well, and I believe you told me earlier that your investigation of the case and your discussion of all the issues with the accused also led you to thoroughly explain to her the affirmative defense of duress?*

DC: *That is correct, Your Honor.*

MJ: *And that it's the defense's position that it does not apply and it was not the accused's intention to raise an affirmative defense of duress in her unsworn statement?*

DC: *Just to raise mitigating factors, Your Honor.*

The military judge then proceeded to discuss this matter with appellant.

MJ: *Oh very well, I understand. Lieutenant Biscoe, I know that, from what your counsel has just advised, they've gone over this with you in the past, but at this time let me just talk to you for a minute about the defense of duress, okay?*

ACC: *Yes, sir.*

MJ: And then I'll have a few questions of you afterwards. I'm not trying to cross-examine you on your unsworn statement; I just want to have it clear in my mind that the defense of duress is not applicable in the case. Is that okay?

ACC: Yes, sir.

MJ: And you just take your time and relax. Lieutenant Biscoe, duress, as a defense, means compulsion or coercion. It is causing another person to do something against her will by the use of either physical force or psychological coercion. *To be*

*a defense, the amount of duress used on the accused, whether physical or psychological, must have been sufficient to cause a reasonable fear that if she did not commit the offense of absence without leave, that she, or a member of her immediate family, would be killed or suffer serious bodily injury.* The amount of coercion or force through any form of sexual harassment must have been sufficient to have caused a person of normal strength and courage to give in. The fear which caused the accused to commit the offense must have been fear of death or serious bodily injury and not simply fear of injury to reputation or property. The threat and resulting fear must have continued throughout the commission of the offense—in this case it would be the offense of AWOL.

*If the accused had a reasonable chance to avoid committing the offense without subjecting herself or members of her family to the threatened danger, then the defense of duress does not exist.* A court in a situation involving the defense of duress would consider here the opportunity or lack of opportunity the accused may have had to report the threat to the authorities, and whether the accused had reasonably believed that a report would protect her or her family from the threatened danger. The burden is on the prosecution to establish the accused's guilt beyond reasonable doubt. Duress would be a complete defense to this offense. And if a court were satisfied by legal and competent evidence beyond a reasonable doubt that the accused did not act under duress, then, of course, the defense of duress would not exist. Now do you understand this?

ACC: *Yes, sir.*

MJ: *And, of course, you have told me that you suffered from sexual harassment prior to the time that you went AWOL, and do you also assure the court that despite this, though, that the defense of duress would not apply in this case, as I have explained that defense to you?*

ACC: *Yes, sir.*

MJ: Then you affirm what your counsel have told me?

ACC: Yes, sir.

MJ: But you did want to call my attention to all of the sexual harassment that you stated to the court that you suffered at that time as a mitigating factor?

ACC: Yes, sir.

MJ: *But it did not rise to the level of duress as I have explained that term to you?*

ACC: *No.*

MJ: Very well. Trial counsel, what's your position as to the providency of the plea at this time?

TC: Your Honor, the plea is provident. No further questions are necessary at this time.

MJ: And I take it, defense counsel, you concur?

DC: That is correct, Your Honor.

MJ: Well, very well, I am also convinced that the plea remains provident. I was convinced earlier that the plea was provident, but I did feel it incumbent upon myself to, and this court, to conduct this inquiry to insure that the affirmative defense of duress would not apply. And I believe the record is adequate and certainly establishes such.

(Emphasis added.)

— — —

The precise question before this Court is whether the military judge sufficiently questioned appellant about her sexual-harassment claim and its effect on her decision to go absent without leave. Appellant contends that the military judge erred by "summarily dismiss[ing]" a potential defense of duress "without establishing the factual basis for [the] determination" that such a defense was "not viable." Final Brief at 7. We disagree.

In *Smith*, 44 MJ at 392, this Court recently commented on the type of inquiry required in guilty-plea cases concerning potential defenses:

We have held that this responsibility includes the duty to explain to a military accused possible defenses that might be raised as a result of his guilty-plea responses. *United States v. Smauley*, 42 MJ 449, 450 (1995); *United States v. Clark*, 28

MJ 401, 405 (CMA 1989); *see United States v. Frye,* 738 F.2d 196, 199 (7th Cir.1984).

We conclude that Airman Smith's *guilty-plea responses adequately reflect his understanding of the above defenses and as a whole established sufficient facts which precluded these defenses from applying in his case as a matter of law. See United States v. Smauley,* 42 MJ at 452.

(Emphasis added.)

For several reasons, we conclude that the military judge made sufficient inquiry of appellant to preclude application of the defense of duress in this case. First, we note that the record of trial clearly indicates that all parties to this court-martial were well aware that sexual harassment might in certain circumstances constitute a defense to unauthorized absence. *See generally United States v. Hullum,* 15 MJ 261, 265–66 (CMA 1983); *United States v. Roberts,* 15 MJ 106. (CMA 1983). Second, the requirements of a duress defense were carefully explained to appellant by the military judge in detail, and appellant acknowledged understanding the legal requirements of this defense. *See United States v. DeHart,* 33 MJ 58, 61–62 (CMA 1991). Third, after a thorough explanation of this defense, appellant and her defense counsel expressly rejected applicability of this defense in her case. *See United States v. Roane,* 43 MJ 93, 99 (1995). Finally, appellant's guilty-plea responses clearly imply that she did not reasonably fear death or serious bodily injury for herself or her family as a result of her alleged sexual harassment, and that Lt Col Chesnick provided her a reasonable chance to avoid committing the charged offense without exposure to any other danger. *See Smith, supra* at 392–93. No further factual inquiry by the military judge was required.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

Chief Judge COX and Judges CRAWFORD and EFFRON concur.

GIERKE, Judge (concurring):

This Court does not condone sexual harassment under any circumstances. The record in this case, however, supports the military judge's conclusion that the sexual harassment did not rise to the level of duress and did not constitute a defense to 2Lt Biscoe's unauthorized absence. Although the majority relies on *United States v. Smith,* 44 MJ 387 (1996), in which I dissented, the facts in this case are significantly different from *Smith.* After reviewing the military judge's inquiry into the possibility of duress and 2Lt Biscoe's responses, I am satisfied that there is nothing in "substantial conflict" with 2Lt Biscoe's guilty pleas. *See United States v. Smauley,* 42 MJ 449, 450 (1995). Accordingly, I join the majority in affirming the decision of the court below.