**UNITED STATES, Appellee,**

v.

**Private E1 Jeffrey L. VAUGHN, 465–19–9704, United States Army, Appellant.**

**ACMR 9200732.**

U.S. Army Court of Military Review.

18 Dec. 1992.

For Appellant: Captain Edward T. Keable, JAGC, Captain Christopher W. Royer, JAGC (on brief).

For Appellee: Lieutenant Colonel Joseph A. Russelburg, JAGC, Major Joseph C. Swetnam, JAGC, Captain Jane F. Polcen, JAGC (on brief).

Before CREAN, GONZALES and DELL'ORTO, Appellate Military Judges.

## OPINION OF THE COURT

DELL'ORTO, Judge:

Pursuant to his pleas, the appellant was found guilty, by a military judge sitting as a special court-martial, of two specifications of absence without leave (AWOL), four specifications of failure to go to his appointed place of duty, disobedience of a noncommissioned officer's order, and failure to obey a lawful order, in violation of Articles 86, 91, and 92, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 891, and 892 (1982) [hereinafter UCMJ]. The military judge sentenced the appellant to a bad-conduct discharge, confinement for three months, and forfeiture of $400.00 pay per month for three months. The convening authority, pursuant to a pretrial agreement, approved only so much of the sentence as provides for a bad-conduct discharge, confinement for 60 days and forfeiture of $400.00 pay per month for three months.

On appeal, the appellant contends that his guilty plea to the first AWOL offense (Specification 1 of Charge I) was improvident and his second AWOL offense (Specification 7 of Charge I) is multiplicious for findings with the offense of failure to obey a lawful order. We disagree with the first of these contentions but agree with the second.

### I.

The appellant pleaded guilty to AWOL from his unit with intent to avoid field exercises from 14 February 1992 through 4 March 1992 (Specification 1 of Charge I). The appellant's infantry company had already departed for a twenty-two day brigade-level field training exercise (Victory Focus) when he returned from emergency leave. The exercise was being held at a field location on Fort Stewart, Georgia, the post at which the appellant was assigned. The appellant informed the military judge that he knew that he was to report to a battalion formation at 0600 hours, Friday, 14 February 1992, for the purpose of accounting for rear detachment soldiers who had not deployed to the field with the unit on Victory Focus. He also knew that if he reported to that formation, he would be sent to the field that day to join his company to perform his duties as a Squad Automatic Weapon (SAW) Gunner. He did not report to the formation because he did not

want to go to the field.[1] Instead, he remained in his barracks room.

On 16 February, Sergeant (SGT) Wedemeier, a member of the rear detachment, discovered the appellant asleep in his room. When the appellant awoke, SGT Wedemeier told him to report to the battalion staff duty officer. The appellant, realizing that if complied he would be sent to the field, refused and remained in his room. Sergeant Wedemeier did not apprehend the appellant and took no further action to exercise control over him.[2] Thereafter, the appellant remained in his room and in the unit area. He consumed his meals in the brigade dining facility but avoided contact with anyone who might have known him. On 4 March 1992, members of appellant's company apprehended him in the barracks, thereby terminating his AWOL.

The appellant now attacks the providence of his plea to the AWOL offense for the period 14 February to 4 March 1992. He asserts that his continued presence in his barracks room throughout the charged period and his contact with SGT Wedemeier on 16 February raised matters inconsistent with his plea of guilty to the charged AWOL period. We disagree and hold that the appellant's plea of guilty to AWOL from 14 February 1992 to 4 March 1992 was provident.

■ An accused's guilty plea will be rejected if he sets up a matter inconsistent with that plea. UCMJ art. 45(a), 10 U.S.C. § 845(a). "The military judge shall not accept a plea of guilty without making such inquiry of the accused as shall satisfy the military judge that there is a factual basis for the plea." Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 910(e). *United States v. Care*, 40 C.M.R. 247 (C.M.A.1969). This Court has held that Article 45(a), UCMJ, "requires that, if an accused raises matter inconsistent with his guilty plea, the military judge further inquire into the providence of the plea." *United States v. Brooks*, 26 M.J. 930, 932 (A.C.M.R.1988) (citing *United States v. Clark*, 26 M.J. 589, 592 (A.C.M.R. 1988), *aff'd*, 28 M.J. 401 (C.M.A.1989)). This Court has also held, "In order for an accused's statements to rise to the level of inconsistency as contemplated by Article 45, UCMJ, the matter presented must reasonably raise a defense, not the mere possibility that a defense exists." *Brooks*, 26 M.J. at 932 (quoting *United States v. Clayton*, 25 M.J. 888, 890 (A.C.M.R.1988), *pet. denied*, 27 M.J. 18 (C.M.A.1988) (citations omitted)). As the Court of Military Appeals has stated, "The bottom line, however, is that rejection of the plea requires that the record of trial show a 'substantial basis' in law and fact for questioning the guilty plea." *United States v. Prater*, 32 M.J. 433, 436 (C.M.A.1991).

■ This case does not present us with the fairly typical scenario of an accused who, by virtue of his human nature, rationalizes his behavior, and thereby seems to raise a matter inconsistent with his plea. *United States v. Penister*, 25 M.J. 148, 153 (C.M.A.1987) (Cox, J. concurring). Here, the stipulation of fact clearly states that SGT Wedemeier had discovered the appel-

---

1. The appellant desired to be administratively separated from the Army. The following colloquy between the military judge and the appellant reflects his attitude about training with his unit:

   MJ: Why didn't you want to go out to the field?
   ACC: I had just returned from emergency leave. My grandfather had passed away. I was very upset. And I was under the impression that I was supposed to start my chapter work [under the provisions of Army Regulation 635–200, Enlisted Personnel (17 Oct. 1990), separate chapters of which govern the separation of enlisted soldiers on particular grounds] again when I returned and when it was not I was very upset and angered.

   MJ: So you were mad at the Army and decided that you were not going to play anymore?
   ACC: I was more depressed than anything, but I was angered. I felt that my best interest was not being considered. I then did [sic] decided not to go out to the field, sir.

2. We will not presume to comment on SGT Wedemeier's leadership in dealing with the appellant. This was a guilty plea. The stipulation of fact contains little detail and SGT Wedemeier did not testify. Whether SGT Wedemeier did more, or could have done more, to respond to the appellant's refusal to report for shipment to the field would require us to speculate. We will not do so.

lant in his room during the appellant's AWOL period. The providence inquiry, both as to the AWOL offense and as to the offense of disobedience of SGT Wedemeier's order, reveals no inconsistency. The appellant forthrightly admitted that, he disobeyed the order; he had no intention of going to the field to join his company; other than the order, SGT Wedemeier did nothing to exercise control over him; and, he had no further contact with SGT Wedemeier or anyone else in a position of authority until his 4 March 1992 apprehension.

The appellant argues that, under *United States v. Coleman*, 34 M.J. 1020 (A.C.M.R. 1992), his presence in the barracks and discovery by SGT Wedemeier established more than a mere casual presence and, therefore, raised an inconsistent matter that should have caused the rejection of his guilty plea. Coleman was charged with, *inter alia,* unauthorized absence from his place of duty for a period of three days. After "partying" and remaining off-post Thursday night, Coleman failed to report for duty on Friday morning. Instead, he returned to his barracks room sometime later where he remained until he reported for duty on Monday morning. In affirming only a one-day absence, this Court noted that no one in Coleman's detachment worked during the weekend except the charge of quarters and that Coleman's barracks were located across the street from his normal place of duty. This Court held that these facts were inconsistent with Coleman's guilty plea to an unauthorized absence that extended beyond Friday and, further, that the military judge erred in failing to clarify this matter under *United States v. Davenport*, 9 M.J. 364 (C.M.A. 1980). *Coleman*, 34 M.J. at 1022.

Unlike *Coleman,* the appellant was charged with unauthorized absence from his unit, "Bravo Company, 3d Bn 15th Inf, located at Fort Stewart, Georgia." The providence inquiry and stipulation of fact clearly show that the appellant's unit was in the field participating in Victory Focus, an exercise in which the appellant had no desire to join. Both the providence inquiry

and stipulation of fact also establish that, other than SGT Wedemeier's order to report to the battalion staff duty officer, no one attempted to exercise any control over the appellant. The military judge correctly concluded that the appellant was merely casually present in the barracks. Accordingly, there was no inconsistency with his plea of guilty to AWOL for the entire charged period. *See United States v. Coglin,* 10 M.J. 670 (A.C.M.R.), *pet. denied,* 11 M.J. 173 (C.M.A.1981); *see also United States v. Sandell,* 9 M.J. 798 (N.C.M.R. 1980), *pet. denied,* 21 M.J. 34 (C.M.A.1985). *Cf. United States v. Pettersen,* 17 M.J. 69 (C.M.A.1983) (AWOL accused's refusal to return to his unit is separately chargeable and punishable from the absence without leave which had not then been terminated). The appellant did not desire to train with his company. Instead, he wanted to be separated from the Army. Since the Army was not cooperating with his desire to be discharged, he decided that he would not train. He made this abundantly clear to the military judge. This record of trial did not demonstrate a "substantial basis" in law and fact to question the appellant's plea.

II.

The appellant next contends that his guilty plea to a second unauthorized absence, from 9 March 1992 to 11 March 1992, is multiplicious for findings with his plea to a charge of failure to obey a lawful order. For the reasons set out below, we agree.

At 0600 hours, 9 March 1992, SGT Colburn ordered the appellant to get dressed and report to the orderly room to see the company commander. While SGT Bullock was escorting the appellant to the commander's office, the appellant walked away, returned to his room, gathered some clothing, and proceeded to a hotel where he remained until surrendering to the Military Police Desk Sergeant on 11 March 1992. On these facts, the appellant entered pleas of guilty to absence without leave and fail-

ure to obey a lawful order.[3] The issue of multiplicity was not raised at trial.

In *United States v. Baker*, 14 M.J. 361 (C.M.A.1983), the Court of Military Appeals "ruled that two charges were multiplicious for purposes of findings if either (a) one of the charges necessarily included all the elements of the other, or (b) the allegations under one of the charges, as drafted, 'fairly embraced' all the elements of the other." *United States v. Holt*, 16 M.J. 393 (C.M.A. 1983). Our review of the two specifications leads us to conclude that the allegation of absence without leave fairly embraces the allegation of failure to obey a lawful order. Furthermore, nothing in the language of the specification, in the stipulation of fact, or in the providence inquiry indicates that the order the appellant disobeyed was anything more than an order to report for routine duties and, therefore, properly punishable under Article 86, UCMJ. *See generally United States v. Peaches*, 25 M.J. 364 (C.M.A.1987); *United States v. Loos*, 16 C.M.R. 52 (C.M.A.1954).

█ Government appellate counsel urge us to apply waiver. We decline to do so as it is apparent from the language of the AWOL specification that it fairly embraced the failure to obey specification. We hold that plain error occurred. *Holt*, 16 M.J. at 394.

We have also considered the appellant's contention, pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), that his sentence is excessive and find it to be without merit.

The findings of guilty of Charge III and its Specification are set aside and Charge III and its Specification are dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted and the entire record, the Court affirms the sentence.

Senior Judge CREAN concurs.

GONZALES, Judge, concurring in part and dissenting in part:

I agree that Specification 7 of Charge I is multiplicious for findings with the Specification of Charge III. However, I disagree that the unauthorized absence in Specification 1 of Charge I did not terminate on 16 February 1992. It is my view that the appellant's unauthorized absence that began on 14 February 1992 ended two days later when Sergeant (SGT) Wedemeier confronted the appellant in his barracks room.

Sergeant Wedemeier was a member of the rear detachment and knew the appellant was AWOL. On 16 February, he went to the appellant's room to inventory the appellant's property.[1] When SGT Wedemeier entered the room, he found the appellant asleep in his bed. Sergeant Wedemeier awakened the appellant, ordered him to get dressed, and ordered him to report to the staff duty officer. When SGT Wedemeier asked the appellant if he was going to comply with his orders, the appellant told him that he was not. Sergeant Wedemeier then left the room without inventorying the appellant's property and never returned. The appellant did not report to the staff duty officer. Instead, he remained in his room and avoided detection until 4 March 1992, when SGT Colburn entered his

---

3. Specification 7 of Charge I reads: "In that Private (E1) Jeffrey L. Vaughn, U.S. Army, Bravo Company, 3d Battalion, 15th Infantry, Fort Stewart, Georgia did at Fort Stewart, Georgia, on or about 0600 hours, 9 March 1992 without authority, absent himself from his unit, to wit: Bravo Company, 3d Bn, 15th Inf, located at Bldg 523, and did remain so absent until on or about 1300 hours, 11 March 1992.

The Specification of Charge III reads: In that Private (E1) Jeffrey L. Vaughn, U.S. Army, Bravo Company, 3d Battalion, 15th Infantry, Fort Stewart, Georgia having knowledge of a lawful order issued by Staff Sergeant Tommy Colburn to get dressed and report to CPT Stephen M.

Twitty, an order which it was his duty to obey, did at Fort Stewart, Georgia, on or about 0600 hours, 9 March 1992, fail to obey the same by wrongfully failing to report once informed by SSG Tommy Colburn to do so.

1. Army Reg. 700–84, Logistics: *Issue and Sale of Personal Clothing*, para. 12–12 (31 Jan. 1992) and Dep't of Army Pam. 600–8, *Military Personnel: Management and Administrative Procedures*, para. 9–6 (1 Aug. 1986), both provide the procedures a unit commander must follow to inventory, safekeep, and dispose of clothing and property of personnel who are absent without authority.

room, ordered him to get dressed, and escorted him to the company.

It has been a principle of military law that an unauthorized absence may be terminated by any proper exercise of military control over an absentee. *United States v. Jackson*, 2 C.M.R. 96, 98 (C.M.A.1952). Something more than casual presence on a military installation is necessary to terminate an unauthorized absence. *United States v. Coleman*, 34 M.J. 1020, 1022 (A.C.M.R.1992).[2] If a military authority declines to exercise control over an absentee or is slow in the exercise of such control, the government should not be permitted to deny a termination of absence because of the failure to exercise control. *United States v. Coglin*, 10 M.J. 670, 672 (A.C.M.R.1981).

Under the circumstances of this case, there was more than the appellant's casual presence on a military installation. He was present in a very specific place on the installation: his assigned room in his unit's barracks. Additionally, one should not ignore or minimize the status and the actions of SGT Wedemeier. Sergeant Wedemeier was a noncommissioned officer authorized to apprehend the appellant for his unauthorized absence. Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 302(b)(2) [hereinafter MCM, 1984 and R.C.M.]. An apprehension may be implied by the circumstances. R.C.M. 302(d). Furthermore, SGT Wedemeier was the unit commander's designated representative to conduct the inventory of the appellant's military and personal property, since he was absent without authority.

Knowing that the appellant was AWOL when he entered the appellant's room, SGT Wedemeier took immediate action to exercise control over the appellant when he saw him in his bed. First, he awoke the appellant from his sleep. Second, he ordered the appellant to get dressed. Third, he ordered the appellant to report to the staff duty officer. Fourth, and more importantly, SGT Wedemeier left the room without conducting an inventory of the appellant's property. Why not? Because SGT Wedemeier's apprehension, albeit implied, was sufficient to constitute the exercise of military control over the appellant and to terminate the appellant's unauthorized absence.

In the alternative, if SGT Wedemeier's actions in the appellant's room were not enough to exercise proper military control over the appellant, SGT Wedemeier's failure to perform his duty as SGT Colburn later did on 4 March, should result in the government not being allowed to deny that the appellant's unauthorized absence terminated on 16 February. *Coglin*, 10 M.J. at 673. This case is not at all similar to *United States v. Phillips*, 28 M.J. 599 (N.M.C.M.R.1989), where no one knew that the seaman was in his barracks room during the ten days of unauthorized absence. It is also unlike the four-day AWOL in *United States v. Pettersen*, 17 M.J. 69 (C.M.A.1983), where two noncommissioned officers went to the off-post residence of an airman to secure his return to duty after the first day of absence, but were prevented from exercising control over the airman when he threatened them with bodily harm.

In the instant case SGT Wedemeier knew that the appellant was in his barracks room. The appellant told SGT Wedemeier he was not going to report to the staff duty officer.[3] The appellant did not threaten SGT Wedemeier or do anything to prevent

---

**2.** On page 1022 of the *Coleman* decision, appears a citation to *United States v. Nixon*, 29 M.J. 505 (A.C.M.R.1989). Appellant also cites *Nixon* on page 4 of his brief. In both instances the citation should be *United States v. Williams*, 29 M.J. 504 (A.C.M.R.1989).

**3.** Apparently, the appellant was under enough military control to receive and have the duty to obey SGT Wedemeier's orders, since the government chose to charge him with disobedience in violation of Article 91, UCMJ, 10 U.S.C. § 891.

The Specification of Charge II reads: "In that Private (E1) Jeffrey L. Vaughn, U.S. Army, Bravo Company, 3d Battalion, 15th Infantry, Fort Stewart, Georgia, having received a lawful order from SGT Wedemeier, a noncommissioned officer, then known by the said PVT (E1) Jeffrey L. Vaughn to be a noncommissioned officer, to get dressed and to report to the 3d Bn, 15th Inf Staff duty, an order which it was his duty to obey, did at Fort Stewart, Georgia on or about 16 February 1992, willfully disobey the same.

SGT Wedemeier from taking further action to enforce his orders. Sergeant Wedemeier should have escorted the appellant to the staff duty officer as SGT Colburn did on 4 March when he confronted the appellant in his room. The government should be bound by Sergeant's Wedemeier's actions. Either those actions were enough to exercise control over the appellant or the unexcusable failure to do so constructively brought the appellant's unauthorized absence to an end.

Even though I have expressed my preference that the appellant's initial absence ended on 16 February 1992 with SGT Wedemeier's constructive apprehension, I cannot overlook the appellant's subsequent misconduct. The appellant did not obey SGT Wedemeier's orders to get dressed and to report to the staff duty officer. The appellant's refusal to report was not at all dissimilar to his actions on 14 February when he refused to report to the 0600 hours rear detachment formation. I am convinced that this refusal and his subsequent actions to avoid joining his unit in the field constituted a second period of unauthorized absence from 16 February to 4 March 1992.

It is clear that an accused may properly be found guilty of two or more separate unauthorized absences under one specification, provided that each absence is included within the period alleged in the specification and provided that the accused was not misled. MCM, 1984, Part IV, para. 10c(11). The evidence received during the providence inquiry and from the stipulation of fact would support a finding of guilty to two separate periods of unauthorized absence, the first from 14 to 16 February and the second from 16 February to 4 March 1992, and would also demonstrate that the appellant would not be misled.[4] If an accused is found guilty of two or more unauthorized absences under a single specification, the maximum authorized punishment shall not exceed that authorized if the accused had been found guilty as charged in

the specification. MCM, 1984, Part IV, para. 10c(11).

Therefore, I would find the appellant guilty of two separate periods of AWOL in Specification 1 of Charge I and affirm the findings of guilty to the remaining specifications of Charge I. I would further dismiss Charges II and III and their specifications as being multiplicious with Specifications 1 and 7, respectively, of Charge I. Reassessment of the approved sentence based on my treatment of Specification 1 of Charge I, and the Specification of Charge II, is not warranted. I would affirm the sentence.

---

4. Of course, the unauthorized absence between 16 February and 4 March 1992, would be multiplicious for findings with the Specification of Charge II (see footnote 3), and require setting

aside the finding of guilty of Charge II and its Specification under the same rationale expressed in part II of the majority's opinion.