UNITED STATES

v.

**John L. BUSH, Seaman Recruit
(E–1), U.S. Navy.**

NMCM 200100094.

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged 15 Sept. 2000.

Decided 29 July 2002.

Maj Charles C. Hale, USMC, Appellate
Defense Counsel.

LT Deborah Mayer, JAGC, USNR, Appellate Government Counsel.

Before LEO, Chief Judge, RITTER, and
FINNIE, Appellate Military Judges.

LEO, Chief Judge:

The appellant was convicted, in accordance with his pleas, at a special court-martial before a military judge alone of unauthorized absence, in violation of Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886. He was awarded a bad-conduct discharge and confinement for 90 days. The convening authority approved the sentence as adjudged.

We have examined the record of trial, the appellant's assignments of error, and the Government's response. We conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ, 10 USC §§ 859(a) and 866(c).

The appellant contends that the military judge erred in accepting his guilty pleas, because the facts elicited during the providence inquiry failed to establish that his unauthorized absence was terminated by apprehension on 8 August 2000, as alleged. We disagree.

Before accepting an accused's guilty plea, the military judge must ascertain "whether the acts or the omissions of the accused constitute the offense or offenses to which he is pleading guilty." *United States v. Care*, 18 C.M.A. 535, 541, 40 C.M.R. 247, 253, 1969 WL 6059 (1969). On appeal, the standard of review is whether the record reveals "a *substantial basis*' in law and fact for questioning the guilty plea." *United States v. Prater*, 32 M.J. 433, 436 (C.M.A.1991)(emphasis added). This standard requires something more than "the mere possibility of conflict between a guilty plea and the accused's statements." *United*

*States v. Logan*, 22 C.M.A. 349, 351, 47 C.M.R. 1, 3, 1973 WL 14641 (1973).

■ The appellant provided the following information during the providence inquiry. He was assigned to the USS GEORGE WASHINGTON (CVN 73), which was home-ported in Norfolk, Virginia. After his leave request was denied, he left his ship without authority on 31 December 1999 and returned to his hometown of Harlingen, Texas. According to the appellant, his mother was ill, and he wanted to check on her. He stated that, shortly after arriving home, he went to the local recruiting office in January 2000 and advised the personnel there of his absentee status, so he would not be considered a deserter. He wanted them to know that he had left his ship because his mother was sick and that he would be returning eventually. He says he was told that he needed to terminate his unauthorized absence at the Naval Air Station (NAS) in Kingsville, Texas, which was approximately two hours away. The appellant chose not to do so. Instead, each month thereafter, he went to the recruiting office, ostensibly to let the personnel there know that he was still around. He was instructed each time that he needed to turn himself in at the Master–at–Arms Office at NAS Kingsville. He never carried out those instructions.

The appellant admitted that he did not believe he was terminating his absentee status when he visited the recruiting office and knew that his continuing absence was not authorized by these visits. In fact, he did not desire to return to military control, because he wanted to stay with his wife and his newborn son. According to the appellant, the only reason he went to the recruiting office was because his command kept calling his house to tell him to turn himself in. Eventually, his absence was terminated by apprehension on 8 August 2000, when he was stopped for a routine traffic violation by the local police and was found to have an outstanding warrant for his arrest as a military deserter.

It is clear from the record that the appellant did not terminate his absence by surrender when he went to the recruiting office and disclosed his absentee status. A surrender only occurs "when a person presents himself or herself to any military authority ... notifies that authority of his or her unauthorized absence status, and *submits or demonstrates a willingness to submit to military control.*" MANUAL FOR COURTS–MARTIAL, UNITED STATES (1998 ed.), Part IV, ¶ 10c(10)(a)(emphasis added); *accord United States v. Claussen*, 15 M.J. 660, 662–63 (N.M.C.M.R.1983). In going to the recruiting office, the appellant's purpose apparently was to avoid being charged with the more serious offense of desertion, which requires the intent to remain away permanently as one of the elements. MCM, Part IV, ¶ 9b(1). By failing to proceed to Kingsville, as directed, he demonstrated his unwillingness to submit voluntarily to military control.

Citing *United States v. Jackson*, 2 C.M.R. 96, 1952 WL 1700 (C.M.A.1952), the appellant claims the failure of the military personnel at the recruiting office to exercise military control over him, when they had the opportunity to do so, demonstrated a lack of diligence. Therefore, he argues, his unauthorized absence terminated in January 2000 and not on 8 August 2000, as alleged. In support of his argument, he points to the following statement in *Jackson:* "If the absentee discloses his status so that the military authorities have full knowledge of all the facts, they could not, with propriety, contend that the absence was not legally terminated." *Id.* at 99. We do not find the appellant's argument persuasive. First of all, the statement in *Jackson* was not part of the holding in that case; it was *obiter dictum.* The issue before the court was whether an unauthorized absence is terminated by the temporary exercise of military control over an accused, when the accused does not disclose his absentee status to the military authority exercising temporary control over him. We believe *Jackson* must be read in conjunction with the later case of *United States v. Raymo*, 1 M.J. 31 (C.M.A.1975). In *Raymo*, the accused went to his local Selective Service Board office, disclosed his absentee status to an Army captain there, and complied with the captain's order to turn himself in at the local FBI office. The agent at the FBI office was unable to confirm the accused's absentee sta-

tus and allowed him to depart. The court held that the exercise of military control over the accused, through the issuance of the captain's order, and the accused's compliance with the captain's order effectively terminated the unauthorized absence. *Id.* at 33.

In *Claussen,* we reviewed facts somewhat similar to the case now before us. The accused in that case met with a Navy chaplain for advice concerning his ongoing unauthorized absence status. We held that "[a] meeting between an unauthorized absentee and military personnel who know of his status and who possess authority to apprehend, pursuant to Article 7 of the UCMJ, 10 U.S.C. § 807, does not necessarily terminate the absence." *Claussen,* 15 M.J. at 662. We went on to say that "once an absentee is given *orders* by military personnel authorized to apprehend, by which the absentee can terminate his absence *and* once the absentee submits to these orders, the unauthorized absence is terminated." *Id.* Assuming that the military personnel at the recruiting office had the authority to apprehend and that their instructions to the appellant could be construed as orders, the appellant chose not to comply. As a result, this is not a case of an absence "constructively terminated," wherein the appellant did everything he could to terminate his absence, only to have military authorities "refuse to receive him or exercise control over him." *United States v. Sandell,* 9 M.J. 798, 799–800 (N.C.M.R.1980). Because the appellant chose not to surrender at NAS Kingsville, as instructed, the exercise of military control over him was incomplete. His visits to the recruiting office in Harlingen alone did not terminate his unauthorized absence.

We have reviewed the appellant's remaining assignment of error.[1] Having considered the nature and seriousness of the offense and the character of the appellant, we find that the approved sentence in his case is not inappropriately severe. *United States v. Snelling,* 14 M.J. 267, 268 (C.M.A.1982).

Although not raised as an assignment of error, we note that the original Special Court–Martial Order No. 05–00 of 11 December 2000 erroneously identifies the inception of the unauthorized absence as 1 December 1999, vice 31 December 1999. We will order corrective action in our decretal paragraph.

Accordingly, we affirm the findings and sentence, as approved on review below. A corrected court-martial order shall be prepared to reflect an inception date of 31 December 1999 for the unauthorized absence.

Senior Judge FINNIE and Judge RITTER concur.

---

1. II. SEAMAN RECRUIT BUSH'S SENTENCE CONSISTING OF 90 DAYS CONFINEMENT AND A BAD CONDUCT DISCHARGE[ ] IS INAPPROPRIATELY SEVERE.