584

**UNITED STATES, Appellee,**

v.

**Private E2 [1] Latonya M. ROGERS,
United States Army,
Appellant.**

**ARMY 20020156.**

U.S. Army Court of Criminal Appeals.

30 Sept. 2003.

---

1. Appellate defense counsel correctly point out a discrepancy in the record concerning appellant's rank. The charge sheet, staff judge advocate's post-trial recommendation (SJAR), record at page 66, waiver of Article 32 pretrial investigation (Appellate Exhibit (AE) II), and pretrial agreement (AE III) indicate that appellant was an E1 at the time of trial. Appellant's Enlisted Record Brief (Prosecution Exhibit 2), the SJAR addendum, and promulgating order indicate that appellant was an E2 at the time of trial.

For Appellant: Captain Linda A. Chapman, JA; Captain Mary C. Vergona, JA (on brief).

For Appellee: Lieutenant Colonel Margaret B. Baines, JA.

Before HARVEY, Senior Judge, BARTO, and SCHENCK, Appellate Military Judges.

## OPINION OF THE COURT

SCHENCK, Judge:

A military judge sitting as a general court-martial found appellant guilty, pursuant to her pleas, of desertion, absence without leave (AWOL) (three specifications), larceny (seven specifications), and forgery (eight specifications) in violation of Articles 85, 86, 121, and 123, Uniform Code of Military Justice, 10 U.S.C. §§ 885, 886, 921, and 923 [hereinafter UCMJ]. The military judge sentenced appellant to a dishonorable discharge, confinement for three years, forfeiture of all pay and allowances, a $3,500 fine, and reduction to Private (PVT) E1. Pursuant to a pretrial agreement, the convening authority approved only so much of the sentence as provides for a dishonorable discharge, confinement for twenty months, a $3,500 fine, and reduction to Private E1.

Appellant's case was submitted to this court on its merits for review pursuant to Article 66, UCMJ, 10 U.S.C. § 866. An issue regarding voluntary termination of unauthorized absence merits discussion, but no relief.

## FACTS

Appellant pleaded guilty to and was found guilty of three specifications of AWOL from her unit for the following time frames: from on or about 19 June 2001 until on or about 3 July 2001 (when she returned to her company); from on or about 18 October 2001 until on or about 23 October 2001 (when she returned to military control at Fort Hood); and from on or about 31 October 2001 until on or about 4 December 2001 (when she was apprehended in Killeen, Texas, and placed in pretrial confinement). The stipulation of fact, agreed to by all parties and admitted into evidence without objection, states that appellant did not have leave or prior approval for any of these absences.

During the providence inquiry, appellant told the military judge that she "kept absenting" herself from her unit because she "wanted out of the Army." During her absences, appellant remained in the Fort Hood and Killeen, Texas, area. She also stated, "I was sometimes ... on post." After this disclosure to the military judge, the following colloquy ensued:

MJ: All right, but were you under the control of your unit when you were on post?

ACC: I went to my unit and I saw like some of my NCOs [noncommissioned officers] and they knew I was AWOL, but they never said anything.

MJ: Mm, huh.

ACC: But I never turned myself [in to] my unit.

## LAW AND DISCUSSION

This court reviews a military judge's acceptance of a guilty plea for an abuse of discretion. *United States v. Eberle*, 44 M.J. 374, 375 (C.A.A.F.1996). We use a *"substantial basis* test for appellate review of the providence of guilty pleas." *United States v. Jordan*, 57 M.J. 236, 238 (C.A.A.F.2002) (emphasis in original). We will not overturn a guilty plea unless the record of trial shows a substantial basis in law and fact for questioning the guilty plea. *United States v. Prater*, 32 M.J. 433, 436 (C.M.A.1991). In determining the providence of an appellant's pleas, " 'it is uncontroverted that an appellate court must consider the entire record in a case.' " *United States v. Falk*, 50 M.J. 385, 389 (C.A.A.F.1999) (quoting *United States v. Johnson*, 42 M.J. 443, 445 (C.A.A.F.1995)).

■ "The military judge shall not accept a plea of guilty without making such inquiry of the accused as shall satisfy the military judge that there is a factual basis for the plea." Rule for Courts–Martial [hereinafter R.C.M.] 910(e). The facts disclosed by such inquiry must objectively support the guilty plea. *United States v. Garcia*, 44 M.J. 496, 497–98 (C.A.A.F.1996). Should the accused set up a matter inconsistent with the plea at any time

during the proceeding, the military judge either must resolve the inconsistency or reject the guilty plea. *Id.* at 498; *see also United States v. Davenport,* 9 M.J. 364, 367 (C.M.A.1980); *United States v. Timmins,* 21 U.S.C.M.A. 475, 479, 45 C.M.R. 249, 253, 1972 WL 14168 (1972); UCMJ art. 45(a), 10 U.S.C. § 845(a).

Article 86(3), UCMJ, provides, "Any member of the armed forces who, without authority . . . absents himself [or herself] or remains absent from his [or her] unit, organization, or place of duty at which he [or she] is required to be at the time prescribed; shall be punished as a court-martial may direct." The elements of this AWOL offense are:

(a) That the accused absented himself or herself from his or her unit, organization, or place of duty at which he or she was required to be;

(b) That the absence was without authority from anyone competent to give him or her leave; and

(c) That the absence was for a certain period of time.

*Manual for Courts–Martial, United States* (2000 ed.) [hereinafter *MCM, 2000*], Part IV, para. 10b(3). Termination by apprehension, as an aggravating factor, must also be proven beyond a reasonable doubt. *Id.*

The *MCM* describes termination of an AWOL through surrender to military authorities, as follows:

A surrender occurs when a person *presents himself* or herself to any military authority, whether or not a member of the same armed force, *notifies that authority* of his or her unauthorized absence status, and *submits or demonstrates a willingness to submit* to military control. Such a surrender terminates the unauthorized absence.

*Id.* at Part IV, para. 10c(10)(a) (emphasis added).

Courts have also considered various circumstances in which an AWOL service member is considered to have "voluntarily terminated" his or her absence. As early as 1952, our superior court noted that casual presence at a military installation does not, without more, terminate an unauthorized absence. *See United States v. Jackson,* 1 U.S.C.M.A. 190, 192, 2 C.M.R. 96, 98, 1952 WL 1700 (1952). The *Jackson* court found that an absentee's presence at his summary court-martial did not terminate his AWOL because the summary court-martial was not aware of the absentee's AWOL status. *Id.* at 192–93, 2 C.M.R. at 98–99. The court remarked that only the exercise of proper military control over an absentee effects an AWOL's termination. *Id.* at 192, 2 C.M.R. at 98; *see also United States v. Raymo,* 1 M.J. 31, 32 (C.M.A.1975) (finding where an Army officer failed to apprehend an absentee who divulged his status, the officer nonetheless "effectively exercised military control" over the absentee by directing him to the Federal Bureau of Investigation).

In *United States v. Coglin,* 10 M.J. 670, 672–73 (A.C.M.R.1981), this court described and explained the relevant factors necessary for an absentee to voluntarily terminate an unauthorized absence. We held that PVT Coglin did not voluntarily terminate his absence because he "did not present himself to competent military authorities with the intention of terminating his absence and returning to military duty." *Id.* at 673. Private Coglin went onto a military installation, identified himself, spoke to an E–7 in personnel about a compassionate reassignment, and went to finance to discuss his pay. *Id.* at 671–73. This court found that PVT Coglin was on post for personal reasons and that he did not disclose his AWOL status to the E–7. *Id.* at 671, 673. While PVT Coglin told another NCO, his former squad leader, that he was AWOL, he left post when the NCO threatened to turn him in. *Id.* at 673.

Today, we reaffirm our holding in *Coglin* that an absentee's return to a military installation does not terminate an AWOL if the return involves a casual presence for personal reasons.[2] We conclude that the four-part test described below must be satisfied in order to voluntarily terminate an AWOL. The absentee must do the following:

2. *Coglin,* 10 M.J. at 673.

(1) *present* him or herself with the *intent* to return to military duty.[3] The soldier must accomplish this by an overt act, done in person, and not by telephone or other means;[4]

(2) make this presentment to a military *authority*,[5] that is, someone with authority to apprehend the soldier.[6] Such authorities include, but are not limited to, a commissioned officer, a noncommissioned officer, or a military police officer;[7]

(3) *identify* him or herself to the military authority and *disclose* his or her AWOL *status*, unless the authority is already aware of the soldier's identity and AWOL status;[8] and

(4) *submit* to the actual or constructive[9] *control exercised* over the absentee[10] by the authority to whom he or she has made the necessary disclosure.

■ We find that appellant did not render her guilty plea to AWOL improvident by stating that she was "sometimes" on post. Appellant did not express an intent to return to military duty. In fact, she "wanted out of the Army." Although the trial judge failed to explain early termination, facts elicited during the providence inquiry indicate that there was no early termination. Specifically, ap-

---

**3.** *Id.* at 672; *see MCM*, 2000, Part IV, para. 10c(10)(a).

**4.** *Coglin*, 10 M.J. at 672; *see also Raymo*, 1 M.J. at 32 (discussing distinction between telephoning for advice and reporting in person).

**5.** *Coglin*, 10 M.J. at 672; *see MCM*, 2000, Part IV, para. 10c(10)(a).

**6.** *Coglin*, 10 M.J. at 672; *see* UCMJ art. 7(c), 10 U.S.C. § 807(c); R.C.M. 302(b) (describing officials that have authority to apprehend persons subject to trial by court-martial).

**7.** *Coglin*, 10 M.J. at 672.

**8.** *Id.; see also United States v. Williams*, 29 M.J. 504, 505 (A.C.M.R.1989) (finding that absentee did not voluntarily terminate his absence by attempting to cash a check at the post exchange (PX) and where he was later apprehended at the PX by military police for bad checks because absentee did not disclose, nor intend to terminate, his AWOL status); *MCM*, 2000, Part IV, para. 10c(10)(a).

**9.** The military authority's actions may result in constructive control over the absentee only if the accused intended to return to military duty and submits to military control. *See Coglin*, 10 M.J. at 672–73; *United States v. Reeder*, 22 U.S.C.M.A. 11, 12–13, 46 C.M.R. 11, 12–13, 1972 WL 14382 (1972) (finding AWOL terminated where absentee entered military police station and informed authorities of his status, but was twice told to wait and finally left after one and one-half hours); *United States v. Gudaitis*, 18 M.J. 816, 818–19 (A.F.C.M.R.1984) (finding that absence was terminated where absentee presented himself to security police with intent to submit to military control, even though absentee did not disclose his status and was improperly placed on pass, because the military authority would have discovered AWOL status through the exercise of "reasonable diligence"); *United States v. Claussen*, 15 M.J. 660, 661–62 (N.M.C.M.R.1983) (finding no termination of absence where chaplain

provided "advice and encouragement" to surrender because chaplain exercised no control over absentee and absentee had no intent to return to duty). "If the absentee discloses his status so that the military authorities have full knowledge of all the facts, they could not, with propriety, contend that the absence was not legally terminated." *Jackson*, 1 U.S.C.M.A. at 193, 2 C.M.R. at 99; *see also United States v. Sandell*, 9 M.J. 798, 799–800 (N.C.M.R.1980).

**10.** *See Coglin*, 10 M.J. at 672–73; *MCM*, 2000, Part IV, para. 10c(10)(a); *United States v. Pettersen*, 14 M.J. 608, 609 (A.F.C.M.R.1982) (holding that "some degree of submission to an order is required before it can constitute exercise of military control so as to terminate" an absence), *aff'd on other grounds*, 17 M.J. 69 (C.M.A.1983); *United States v. Vaughn*, 36 M.J. 645, 647–48 (A.C.M.R.1992) (finding no voluntary termination where absentee was charged with AWOL but living in barracks and eating in dining facility because NCO took no action to exercise control over absentee when absentee failed to obey his order to report); *United States v. Pinero*, 58 M.J. 501, 503–4 (N.M.Ct.Crim.App.2003) (finding guilty plea provident where absentee interrupted his AWOL by submitting to a urinalysis upon order of a petty officer because interruption was de minimis, appellant affirmatively waived early termination issue, and even assuming error, there was no material prejudice); *United States v. Bush*, 57 M.J. 603, 604–5 (N.M.Ct.Crim.App. 2002) (finding no termination of status where appellant repeatedly visited a recruiting station during AWOL period, disclosed his absentee status, and was instructed to turn himself in, because he did not demonstrate a willingness to submit voluntarily to military control). *But see United States v. Coleman*, 34 M.J. 1020 (A.C.M.R. 1992) (in a factual sufficiency analysis, finding voluntary termination of one-day absence on Friday where absentee stayed in the barracks all weekend, the charge of quarters was the only person from the unit working that weekend, and absentee reported for duty on Monday).

pellant emphasized during the plea inquiry that she never turned herself in to her unit. Appellant's "casual presence" in her unit did not rise to the level of voluntary termination.[11] She did not overtly submit to military control and "no one attempted to exercise any control over the appellant." *Vaughn*, 36 M.J. at 648.

## CONCLUSION

■ If, during a plea inquiry, evidence is adduced indicating the accused's casual presence in the unit area during the AWOL period alleged on the charge sheet, then before accepting the plea the military judge should explain voluntary termination and ensure that no factual basis exists for it.[12] In doing so, the military judge should focus on the requisite factors announced in *Coglin*, and reaffirmed today: presentment with intent to return, presentment to a military authority, identification and disclosure of status, and submission to actual or constructive control.

In the present case, we find that appellant's comments during the providence inquiry were not inconsistent with her pleas of guilty to AWOL for the periods alleged. Therefore, we will affirm the findings of guilty to Charge II and its Specifications.

We have reviewed the matters personally raised by appellant under *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), and find them to be without merit. The findings of guilty and sentence are affirmed.

Senior Judge HARVEY and Judge BARTO concur.

11. *See Coglin*, 10 M.J. at 672–73; *Jackson*, 1 U.S.C.M.A. at 192, 2 C.M.R. at 98; *Vaughn*, 36 M.J. at 648.

12. *See Garcia*, 44 M.J. at 498; *Timmins*, 21 U.S.C.M.A. at 479, 45 C.M.R. at 253 (both indicating that in a guilty plea case the military judge must resolve with the accused any reasonably raised defense); R.C.M. 910(e) discussion. Military judges also should be alert to "[f]indings of more than one absence under one specification." *MCM*, 2000, Part IV, para. 10c(11).

An accused may properly be found guilty of two or more separate unauthorized absences under one specification, provided that each

## APPENDIX

In a contested case involving absence without leave, we suggest use of the following pattern instruction by military judges when the issue of voluntary termination arises:

The evidence has raised the issue of whether the accused voluntarily terminated his unauthorized absence (AWOL) prior to the enddate alleged in (the) Specification ___ of Charge ___. A return to a military (installation) (base) (camp) (post) (facility), without more, does not terminate an AWOL if it involves merely a casual presence based on personal reasons. However, you may find that the accused voluntarily terminated (his)(her) AWOL status if you find the following facts. First, the accused presented (him) (her)self with the intent to return to military duty. The accused must accomplish this by an overt act, done in person, and not by telephone, electronic, or other means. Second, the accused must make this presentment to a military authority, that is, someone with authority to apprehend the soldier. Such authorities include, but are not limited to, a commissioned officer, a noncommissioned officer, or a military police officer. Third, in doing so, the accused must identify (him)(her)self to the military authority and disclose (his)(her) AWOL status, unless the authority is already aware of the accused's identity and AWOL status. Fourth, the accused must submit to the actual or constructive control exercised over (him)(her) by the authority to whom (he)(she) has made the necessary disclosure. The military authority's actions may result in constructive control over the accused and fulfill this requirement, but only if the accused intended to return to military duty and submits to military control.

absence is included within the period alleged in the specification and provided that the accused was not misled. If an accused is found guilty of two or more unauthorized absences under a single specification, the maximum authorized punishment shall not exceed that authorized if the accused had been found guilty as charged in the specification. *Id.; see also United States v. Francis*, 15 M.J. 424 (C.M.A.1983).

We also suggest that the instruction included as an appendix to this opinion be added to the Dep't of Army, Pam. 27–9, Legal Services: Military Judges' Benchbook.

[If you find that the accused voluntarily terminated (his)(her) absence, but later absented (him) (herself) from his (unit) (place of duty), you may find the accused guilty, by exceptions and substitutions, of two or more separate unauthorized absences under one specification, provided that each absence is included within the overall period alleged in the specification.]

If the issue of voluntary termination is raised by the evidence, the prosecution bears the burden of proof to establish beyond a reasonable doubt that the accused did not voluntarily terminate (his)(her) AWOL. In order to find the accused guilty of AWOL for the entire period alleged in the specification, you must be convinced beyond a reasonable doubt that the accused did not voluntarily terminate his AWOL status prior to the end date indicated in the specification.

NOTE: **Multiple AWOLs under single specification.** "If an accused is found guilty of two or more unauthorized absences under a single specification, the maximum authorized punishment shall not exceed that authorized if the accused had been found guilty as charged in the specification." *Manual for Courts–Martial, United States* (2000 ed.), Part IV, para. 10c(11).